Porter, J.
delivered the opinion of the court. The circumstance of this case having been once remanded, with the intimation of an opinion on one of the principal points, rather different from that lately expressed by the court, joined to the earnestness with which an application for a rehearing has been pressed on us, has induced a very patient and particular attention to all the arguments offered by defendant’s counsel. After attentively *707 weighing every thing advanced, we are obliged to refuse the application.
On the first point, it is insisted that the deed of sale by the sheriff is not of the essence of the contract; that the adjudication transfers the property; that the deed is only the evidence of this transfer.
Admitting this position to be correct, it by no means follows that other evidence than the deed can be received of the adjudication. A contract is complete, in the definition given by the Civil Code, when there is the consent of the parties — the capacity to contract, a determinate object, forming the matter of an engagement, and a lawful purpose ; yet, suppose all these in the purchase of a slave or a plantation ; could the agreement be enforced unless there was evidence of it in writing?
But it is said that the exclusion of parol proof does not extend to sales made by authority of justice.
To this there are several answers.
Our lawr has provided, that all sales of immoveable property, shall be made by authentic act, or under private signature; and that all verbal sales of any of these things shall be *708 null, as well for third persons, as for the con-trading parties.
4 sheriff selling land or slaves to a buyer, whQ pays the price agreed upon by the adjudication, is within the letter of the provision quoted. — And the contract thus formed, is within its spirit.
For the policy of our law. would be entirely defeated, if parol proof could be received to establish sheriff’s sales of immoveable property; and our jurisprudence would be strangely inconsistent, if it had provided, that when land is claimed in virtue of the owner’s consent, the demand should be rejected unless that consent was proved by written evidence, but if asked for, by the alienation which stands in place of consent, that it might be proved by parol.
The act of the legislative council, which prescribes the formalities to be pursued, when property is sold on execution, supports the construction we put on it; for it requires a written conveyance,only in case land or slaves are sold. It intended then to make a difference between them and moveables, and to preserve the distinction which runs through our whole law on this subject.
*709 It is proper to observe, that this is not new doctrine in this court, as far back as June term, 1820, in the case of Durnford vs. Degruys & al. syndics, it was stated “ the property in the land sold by the sheriff, has never been determined to pass by the sheriff’s return. The law requires the sheriff to make out, and deliver a deed of sale to the buyer, and this is the period at which the property passes.” 8 Martin, 222.
When therefore, the thing disposed of is immoveable, written evidence of the purchase must be produced.
Nay, more, such written evidence as is prescribed by statute.
This results from the principles already established by the opinion of the court in this case, and is supported by the authorities drawn from the Spanish law, which are there referred to; property can only be claimed from him, who was once proprietor, by his consent shewn that an other person should have it — lapse of time, from which that consent is presumed, or a forced alienation.— Now, if asked under the latter mode, it must be shewn that the alienation has been made in the manner prescribed by the authority *710 which compels it; otherwise the purchaser may , have a conveyance, but he has not one under the ^aw’ an<^ al°ne can stand in place of proprietor’s consent. The act already referred to, directs the sheriff to give a title in a particular form, and is so jealous of any other being introduced, that it prohibits the deed being recorded, or read in evidence, if there are any material interlineation or alteration therein, which shall not have been noted before signing.
All laws, which deprive the citizen of his property, against his wish, must be strictly pursued by those who claim the benefit of them.
There is great error in imagining that the court is influenced by any common law idea, in coming to this conclusion. It is a fact familiar to every one acquainted with that jurisprudence, that the purchasers at sheriff’s sales, under a judgment of a court governed by it, take the property, without being in any way responsible for previous irregularities— all that they are required to look to, is that there is a judgment. A strange anomaly it is in that system — and one which we would not, if we had the power, wish to introduce here
*711 The second point made, is, that the court should have ordered these slaves back into the hands of the sheriff, because they were once attached in two suits, one at the demand of the present defendant, and the other at the suit ofLaroque Turgeau.
We understood this to be an action in which the plaintiff claimed slaves descended to him from his ancestor. The defendant pleaded title to the property, in virtue of sales made under judgments rendered against the plaintiff and his co-heirs. This title, wre thought, was not made out, and we decided that there be judgment for the petitioner; but we added, as the law required us to do, that as the purchaser’s money had been applied to the discharge of the plaintiff’s debts, he must reimburse the buyer, before he could take the thing sold. In coming to this conclusion, we considered Camfranc as purchaser at sheriff’s sale, and in that character alone, and so, expressed it. The rights which he had in virtue of his former judgment, were notin any respect affected by the decree rendered, any more than those of Laroque Turgeau, or his heirs. The only question considered and decided, was the legal title between owner and *712 purchaser, and the circumstance of Camfrane # ⅜ being plaintiff in a suit, under which it did not appear he had bought, could not in any way affect our determination.
Nor do we see that his rights require w’e should make such an order, if we had the power. It is not necessary to give effect to a fieri fiadas, that the slaves should be in the sheriff’s hands when it issues.
The error into which the counsel has fallen arises from a misconception of the opinion already rendered. In his supplemental argument, he states, that the court having maintained the judgments, in the cases of Camfranc vs. Dufour, and Turgeau vs. Dufour, but annulled the sales, made in consequence of these judgments, ought to restore every thing to the same state. The court has not annulled the sales made in consequence of those judgments. It considered there was not legal evidence of the sheriff having sold the slaves sued for, under any judgment, as he recited one in his deed, which the purchaser would not, or could not produce.
On the last point, that judgment cannot be given for all this property, because there are other heirs who may yet accept, we have not *713 had any difficulty. The heir, who is now be- .... tore the court, until the succession is liquidated, has a right to take the whole estate; we know not but it may be all required to pay the debts of the ancestor. As he has accepted with the benefit of an inventory, he is entitled in the first instance to the possession and administration of the deceased’s property. Civil Code, 108, art. 104.
We directed the cause to be remanded, in order to obtain evidence what the hire of the slaves amounted to. It has since been suggested to us, that the parties could terminate the litigation between them, if they had the opinion of the court whether any hire is due. and for how long.
To aid them in this intention, we have attentively listened to their arguments, and we have formed a conclusion on the authorities cited,and the reasons urged in support of them.
The question appears to us, to lie in a very, narrow compass. The elementary doctrine is, that a possessor in good faith does not owe fruits until after judicial demand. Domat, liv. 3, tit. 7, sec. 3, art. 5. Civil Code, 102, art. 6 and 7. And that good faith is ordinarily tested by enquiring w hether the defect in the *714 title (if it is one of a nature to transfer the property) proceeds from a vice in the form, or a wanl °f right in the person who convey-e(j. jn Qpier words, if it is an error in fact, or an error in law, under which the purchaser holds the object claimed.
It has been urged on the part of the plaintiff, that the defect existing here w'as of the latter kind, and he has relied on the case of Francoise vs. De Laronde, 8 Martin, 619, asa positive authority in support of this position. We cannot agree with the counsel, and we believe a fair distinction exists, and can be shewn between that case and the one now presented for decision.
The article cited from the Code, 103, art. 7, is nearly the same with that found in page 488, art. 68, which defines the just title, that is the basis of ten years prescription, longi temporis. The authorities which apply to the one, .vpll illustrate the other.
Pothier tells us that a just title is that W'hich is of a nature to transfer the property; so that when it is not transferred, it is a defect of right in the person who makes it, and not a defect in the title, inconsequence of which the tradition is made, Pothier, Traité de prescrip *715 tion, n. 57—he adds in the same treatise, n. 85, that a title void in itself, will prevent him in whose favor it was executed, from pleading prescription; and our Code says, when the title is null from a defect in form, the party cannot prescribe under it. Civil Code, 488, art. 70.
Let us apply this doctrine to the case before us.
The title presented here is perfect as it respects form; it pursues the very words of the statute; the defect is a want of right or authority in the sheriff* to make such a conveyance, not a defect in the manner he made it. As nothing, therefore, appears on the face of the deed which is defective, the knowlege of want of right, in the person who sold, is not brought home to the vendee, and his error was one of fact, not of law. It is difficult to see where is the difference between this case and an ordinary one of sale, where the purchaser acquires, from a person who has no title, by a regularly executed act, before a notary public; in such case the buyer acquires none, but he has that good faith which enables him to plead prescription.
The plaintiff* has assimilated this to a con *716 tract, entered into with a person who acts as attorney in fact for another. In such a case it js ¡f agent had no authority, the buyer wouj¿ be in bad faith; if he had one which was forged, the purchaser would be a bona fide possessor. We acknowlege the analogy so far as to admit that the sheriff acted here as an agent, but we cannot see any distinction in the cases put, and we think there would be as great an obligation in the vendee, to examine the verity of the written power, as there would be for him to enquire into the truth of the assertion of the seller, that he possessed one. We believe that in both hypotheses it would be an error of fact; one which the law would not consider of such a nature, as to prevent the party from pleading prescription. The rule is, that when the opinion of the possessor, who holds an object under a title of sale, has a just ground, though in fact there is no sale, the opinion is equal to title, Pothier, Traité de prescription, n. 96. Digest, lib. 41, tit. 4, l . 11. Idem, l. 2, n. 16. Bonce fidei emptor esse videtur, qui ignoravit earn rem alienam esse ; aut putavit cum qui vendidit, jus vendendi habere. Digest, lib. 50, tit. 16, l. 109. From every thing which appears in proof in the case, now be *717 fore us, we have no difficulty in concluding that the purchaser honestly believed he had a good title, and had a just reason for that belief.
But it is said that in the suit of Francoise vs. De Laronde, it was held that the purchaser was responsible for the irregularities, which had taken place in the sale of minor’s property. It was so held, and correctly; because, by the 60th law of the 3d Partida, tit. 18, the order of the judge, authorising' the sale, the length of time it was advertised, and the fact of it being at auction, must be all expressly mention-, ed in the deed, in order that the purchaser may know what he buys. In that case the sale was not made in the form prescribed by law, and the buyer was justly told that he must be presumed to know defects which appeared on the face of the instrument by which he held the property.
It results from this view of the subject, that the appellee must pay hire for the slaves, from the date of filing the petition, and that the plaintiff owes judicial interest on the money paid by defendant; on the sum of four thousand and forty dollars for the same length of time— the former judgment, remanding the cause, to ascertain the value of the services of the slaves, does not require any alteration,