### SHIFF & AL. vs. WILSON.

APPEAL from the court of the sixth district.

PORTER, J. The petitioners state that the defendant was wife of the late James H. Gordon, who was their debtor; that at his decease, she took possession of all his estate, real and

3ns 91
45 303
3ns 91
46 729

The husband may be surety for the wife in an appeal bond. Courts in this state cannot enlarge their jurisdiction by fictions.

West'n District,
*Sept.* 1824.

SHIFF & AL.
*vs.*
WILSON.

personal, retains it in her possession, and uses it as her own : that she took an active concern in the affairs of the community : that she did not make a faithful inventory of the property : and that she has concealed and made away with part of the effects thereof : by reason of all which, she has made herself personally responsible for the debts contracted by her husband.

They also pray that judgment may be given against her as tutrix to the minor children and heirs of the said Gordon, and that the same be satisfied out of his estate, in her hands to be administered.

To this she pleaded several pleas, one denying all the facts on which her personal liability is charged; and the other declining the jurisdiction of the court, and averring that the case was one properly cognizable by the court of probates : the others do not require to be mentioned.

The cause was submitted to a jury on special facts, whose finding in the opinion of the court below, having negatived these averments in the petition, which charge the defendant as liable, in her private capacity; but having also found that the debt was due by the estate of

James H. Gordon, it gave judgment that the plaintiffs recover from the defendant the sum claimed in the petition, to be levied from the goods and chattels of said estate, in the hands of the defendant, tutrix to her minor children, to be administered.

From this judgment the defendant appealed, and the plaintiffs on the appeal have came into this court, and prayed that the judgment might be so amended, as to declare and make her responsible in her private capacity, for the amount ascertained to be due them.

Previous, however, to filing this prayer for amending the petition, the plaintiffs moved to dismiss the appeal, on the ground that the husband of the defendant had signed the appeal bond as surety, and that he could not legally do so, as he was also defendant in the cause.

The husband who appears in an action where his wife is sued for debts antecedent to the coverture, is only nominally defendant, and his presence is required, not because the judgment can affect him, but because it is necessary he should watch over and protect the interests of his wife, who, during marriage, is considered, in regard to judicial proceedings, as a minor, and incapable of defending herself. The

judgment rendered in this case is against her alone; and if he have the other qualifications, which the law requires in judicial sureties, we are entirely satisfied that the circumstance of his being made defendant for the purpose of protecting the interests of another, does not prevent him from acting as surety. By giving bond in this capacity he furnishes that security, *in addition to the responsibility of the defendant,* which the law contemplated in requiring another person than the party cast in the suit to sign the appeal bond.

This brings us to the question of jurisdiction. The defendant complains, that the judgment rendered here, is one which could not be legally given against her, by the district court; that the court of probates has exclusive jurisdiction of the settlement of estates administered by the representatives of minor heirs; and that the decree having negatived all idea of personal responsibility, the court could not give judgment against her in her representative capacity. This position, so far as it assumes exclusive jurisdiction to the probate court, of claims against successions represented by others, than heirs arrived at the age of majority and accepting purely and simply, is too

clearly supported by law, and too solemnly re-

cognized by repeated judgments of this court
to be now questioned. The plaintiffs, there-
fore, with great propriety, have not contested
the general rule, but they contend that the
court, having obtained jurisdiction, by those al-
legations in the pleadings which charged the
defendant with acts that made her responsible
in her personal capacity, could with pro-
priety, and without exceeding the powers vest-
ed in it, give judgment against her in her cha-
racter of administratrix. But to this argument
we are as little prepared to give assent, as we
would to that which would have asserted this
right in the court, on pleadings conformable to
the truth of the case. Allegations of the par-
ties confer the power on these tribunals in
which they are made, to examine the case
which they set out, if that case be one proper
for the court to take cognizance of; but they
do not invest it with authority to investigate
causes which the law has not assigned to it. If
such were the consequence, then it would fol-
low that the tribunals of justice in this country
would be unlimited in their jurisdiction, and
the parties litigating could contract their pow-
ers, or enlarge them, as it suited their interest,

caprice, or necessities. To what difficulties
this would lead, it is almost unnecessary to
state; by the operation of this principle, the
whole jurisdiction of the court of probates
would be taken from it; the settlement of es-
tates, instead of being made upon an examina-
tion of the claims of all interested, and with a
due regard to the legal rights of the respective
creditors, would be thrown into utter confu-
sion, and litigation multiplied, and costs aug-
mented without any rational object being at-
tained. Nor would the evil be confined to that
court, it would extend to all in the state. By
the same process of reasoning, the criminal
court of Orleans could entertain a question in
regard to a land title, or a justice of the peace
give judgment for $10,000. All that would be
necessary for their exercise of this authority,
would be an allegation of crime before the for-
mer, and the statement of a debt within the ju-
risdiction of the latter. We know of courts in
other countries, in England particularly, tak-
ing on them, by adding to a charge of those
things of which they have cognizance; other
matters not originally within their jurisdiction,
the right to investigate the latter and decide on
them. But in this country, where the tribunals

of justice derive their authority from positive law, and have just so much power as is conferred on them, and no more: where each order of magistracy, judicial, executive, and legislative, are bounded by the constitution, and can only move within the orbits assigned them? the idea that any branch of our government may enlarge its limits, or increase its power, by its own act, cannot be for a moment tolerated. If we could extend our jurisdiction by fictions, we might also create them in each particular case, and pass not on facts which were proved, but on those we imagined.

We are therefore clearly of opinion, that the allegations in the petition, which gave jurisdiction to the district court of a case within its authority, did not justify it in giving judgment on matters belonging exclusively to another tribunal, and that the judgment rendered in this case was null and void, and must be reversed.

It remains however to consider whether that court did not err in not rendering judgment against the defendant in her personal character. An examination of the facts, on which this judgment is demanded, need not now be gone into, because the opinion we entertain on a bill of exceptions, taken to the opinion of the district

judge, permitting certain facts to be submitted by the defendant to the jury, requires us to remand the cause. As to that part of it, which relates to the relevancy of the fact, as not growing out of the pleadings, we think there is not any foundation for it. The ground of the action is, that the defendant made herself personally liable by various acts in relation to the estate of her deceased husband: the answer meets all these facts, in detail, and denies them. The questions submitted to the jury, fairly arose on the issues joined, and were necessary to a correct understanding of the conduct of the defendant. As we said in the case of *Livingston* vs. *Heerman*, parties may present to the jury, facts which go to establish the title set up, although these facts should not be set forth in the petition: it is true, that they must not be at variance with the allegations in the petition and answer, but the facts are always pertinent where they tend to support the claim set up. 9 *Martin*, 710.

As to that part of the exception taken, which objected to the questions submitted to the jury, because the *intention* or *design* with which the defendant had done certain acts, more difficulty exists. We are not prepared to say that

there may not be some acts done by a widow,
in relation to an estate, so equivocal in themselves, that the intention or design with which
they are committed, may not be a proper subject for enquiry and decision by a jury on special facts submitted. But whether she has done *any* act in regard to the community, *with an intention* to accept it, appears to us too general. There are many acts by which a widow may lose her right of renouncing the acquets and gains, and make herself responsible for the debts, no matter what may be her intention and design. In regard to these acts, if the submission of intention was made to control their legal effect, it was erroneous; if not with that design, it was useless. The cause must, therefore, be remanded on this ground; and there is also another consideration which would induce us to send it back, if that already mentioned were wanting. There is a most violent presumption created by the verdict, that the property retained by the widow, and not sold, makes a part of her *biens propres*; though it is not proved so clearly as to enable us to act on it as a fact legally established. The case indeed does not differ from that of Cox *vs.*

SHIFF & AL.
*vs.*
WILSON.

the present defendant, decided at the last term of the court.   *Vol.* 1, 629.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided, and reversed; that the case be remanded for a new trial, with direction to the district judge not to permit the defendant to submit to the jury the intention or design with which *any act* was done in relation to the estate of the late James H. Gordon: it is further ordered, adjudged and decreed, that the appellee pay the costs of the appeals

*Baldwin* for the plaintiff, *Wilson* for the defendant.