## DANIEL TREADWELL WALDEN *v.* SAMUEL JARVIS PETERS and others.

Plaintiff having offered, through a broker, to sell a piece of property for a fixed price, placed a written memorandum in the hands of the latter, specifying the conditions. A list of persons willing to purchase on the terms proposed, with the proportion which each would take, and the names of their respective endorsers, was subsequently approved and signed by the plaintiff. These memoranda having been placed in the hands of a notary to prepare an act of sale, the completion of the sale was arrested in consequence of a difficulty raised by the defendants as to the validity of plaintiff's title. *Held,* that the facts prove a contract binding on the parties ; and that the assertion of title to the premises by the defendants, under such circumstances, and with such evidence of right, could not subject them to damages for slander of plaintiff's title.

In an action for slander of title, plaintiff must prove malice in the defendant. But where it appears that the latter had no color of title at the time, malice may, perhaps, be inferred.

Walden v. Peters and others.

The plaintiff in a petitory action, who has reasonable ground to believe that he has good cause of action, will not be liable to damages on discontinuing or losing his case. Nor can any action for slander of title be maintained, where defendant has good reason to believe that he is the real owner of the property.

The principal object of a suit for slander of title is to compel the defendant either to waive all right, or to institute suit and thereby enable the plaintiff to establish his title.

In an action for slander of title, defendants, who had reconvened by asserting title under a contract with plaintiff, and prayed that he might be condemned to execute a conveyance to them or to give security, as well as for damages, on the second day of the trial, but before plaintiff had concluded his evidence, moved to discontinue : *Held*, that they were entitled to discontinue the whole plea in reconvention, including the claim of title.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.

BULLARD, J. The plaintiff, Walden, represents in his petition that he is the lawful owner and possessor of a tract of land in the parish of Jefferson, of about eight *arpens* front by a depth of about one hundred. That the defendants do publicly declare and give out that they are the owners of said tract of land, and that many persons are induced to believe, in consequence of the speeches and declarations of the defendants, that he is not the owner, but that it belongs to them. That if it were not for these declarations he could advantageously sell said tract of land, and that he has thereby sustained damage to the amount of $100,000. He, therefore, prays that he may be decreed to be the true owner of the tract of land, and that he may have judgment for his damages aforesaid, and for general relief.

This suit was instituted on the 2d of February, 1837, and, on the 16th of the same month, the defendants filed their first answer, in which they aver that they purchased from the plaintiff the tract of land described in the petition, through Palmer, a broker, by act under private signature, dated Nov. 18, 1836 ; and they aver their readiness to comply with the stipulations, terms, and conditions of the contract, when the plaintiff's title to said property shall be decreed to be valid, or when he gives security as required by law. They allege that the titles are informal and their validity doubtful, and that the plaintiff knew of their doubtful validity when he signed the contract under private signature. They say, further, that if the title had been formal and free from doubt, they might

have re-sold the property at a large profit, at least of $150,000, which the plaintiff is liable to pay to them if he should fail to make good said titles, or to give security according to law.

They offer to comply with the terms of the contract, and pray that the plaintiff may be decreed to execute a proper deed of sale by public act; and the respondents being fearful of eviction by the title of the heirs of Beal, the plaintiff's vendor, pray that the plaintiff may be adjudged to give security.

On the 3d January, 1838, the plaintiff filed a supplemental petition, in which he alleges that since the institution of the suit the property has fallen very much in value, and that he could not then sell it except at a much lower price than that for which it might have been sold at the time when the defendants set up their unfounded claim. He, therefore, claims $100,000 damages.

To this an answer was put in during the same month, (January, 1838,) in which the defendants allege that they have long since renounced all their right, if any they had in this case, as will appear from the record; but that, if they should be compelled to form issue, and their plea be overruled, they deny their liability as alleged in the supplemental petition, and all the allegations therein contained. The record shows a formal waiver of title, dated May 18, 1837.

The trial commenced on the 1st of December, 1840, and on the next day, as appears by a bill of exceptions, the defendants, before the plaintiff had concluded his evidence, asked the leave of the court to discontinue their entire demand in reconvention, to wit, every part of the original answer which set up title to the property, their demand for the execution of a title or for security, and their demand for damages, which was objected to by the plaintiff; but the court gave the leave so far as it refers to the demand for a public title, security, and damages, and refused it as to the claim of title set up by the defendants.

Whereupon it was entered upon the minutes, by order of court, that the defendants be allowed to withdraw the two demands in their answer, to wit, *first*, that the plaintiff should be decreed to execute a deed of sale by public act, and *second*, that the plaintiff should be decreed to give security against disturbance; and it was

further ordered, that the defendants should be allowed to discontinue any claim for damages contained in their answer.

Thus it appears that, pending the trial, the issues upon which the jury was sworn to pronounce were totally changed. The defendants had entered a formal waiver of title to the land under their contract with the plaintiff, and of their demand for security to make good the title derived from him, and also of that for damages. Nothing then remained to try but the original matter set up in the plaintiff's petition, to wit, the slander of his title by the defendants. Yet the trial proceeded, and the jury found a verdict for fifty thousand dollars damages. A new trial was granted as to one of the defendants, and the others have appealed.

This verdict can only be justified by a slander of title; for it cannot be pretended that the jury intended to give damages against the defendants for refusing to complete the contract for the purchase of the land as set up in their answer. No damages were demanded on that account, and, indeed, the plaintiff denied that there ever was such a contract, and the judge so instructed the jury. The question, therefore, which we have to decide is, whether the evidence proves a slander of title which entitles the plaintiff to such damages.

Before we proceed to examine this question it is necessary to premise that, as was alleged in the original answer, the plaintiff had offered to sell the property in question, through Palmer, a broker. A memorandum in the record, signed by the plaintiff, shows that he offered to sell the plantation in the parish of Jefferson, setting forth its description and extent, about which there is no dispute, at the rate of $250,000, (he retaining one-fourth,) the price to be payable one-fourth in cash, and three-fourths in one, two, three, and four years, the notes to be drawn and endorsed to his satisfaction. This proposition is dated the 18th Nov. 1836, when it was handed to the notary. Another document is exhibited in substance as follows:

" Amount of three quarters interest is $187,500." " We the undersigned agree to take an interest in the purchase of Walden's property, in the proportions fixed opposite our names; the time and manner of disposing of said property to be fixed by a majority in number and amount, so soon as the transaction with D. T. Wal-

den be completed by a notarial act. New Orleans, Nov. 26, 1836." This is signed by the defendants, and the amount each is to pay is affixed to the names. There is a third memorandum, setting forth the names of the purchasers somewhat varied, which is signed by Walden, and approved by him, with a condition added by him that he should retain possession for a certain length of time. This last document is dated December 15, 1836. These memoranda, it appears, were deposited with a notary, with a view of having the conveyance drawn up.

On the trial the defendants took a bill of exceptions to the charge given by the judge to the jury, in which he instructed them that the above mentioned memoranda, taken together, did not amount, in his opinion, either to a sale or a promise to sell. "I see," said he, "in these documents mere proposals passed between the plaintiff and the defendants, relative to an intended sale, but no such final action of the parties on these proposals, as can amount either to a sale, or to a promise to sell. If there was no sale, Walden was, at the institution of this suit, and is still the owner of the property in question, and the giving out by the defendants that they were the owners, was a slander of Walden's title."

Up to the time of the final rupture of this negotiation, on account of a supposed defect in the plaintiff's title, it was not intimated that there was any thing wanting to constitute a promise to sell. The thing and the price were certain, and, after the signature by Walden of the last memorandum containing the names, shares, and endorsers of the purchasers as finally settled, there can be no doubt as to the parties. Here was a written proposition to sell, a written agreement signed by various persons, or by their authority, to buy, and it appears to us that through the intervention of the broker there was a concurrence of minds, a consent, sufficient to constitute a contract between the parties, and that the court erred in instructing the jury that there was no promise to sell. The last memorandum, it is said, presented new persons as purchasers. Still it was approved by the plaintiff; and it is not for him to say that the new condition, suggested by himself, was not accepted. It was not objected to in any part of the negotiation. The plaintiff himself hurried the notary to make out the

conveyance ; and the notary, who is at the same time an experienced and able member of the bar, was requested by some of the defendants to examine the title of the plaintiff. He did so, and gave it as his opinion that it was defective. It was in consequence of this difficulty, and not of any want of understanding as to the essential conditions of the contract, that the sale was not completed by a notarial conveyance.

If, under these circumstances, the defendants, waiving all objections to the title, had accepted the conveyance, there can be no question that they would have been the owners as to the whole world. And if, on the other hand, they had sued for a conveyance, alleging title, so far as the plaintiff was concerned, as evidenced by the different memoranda, it is not easy to perceive how they could have failed ; but if they had, they would not have subjected themselves to damages for asserting title under such circumstances, and with such evidence of right emanating from the plaintiff himself. Such was the doctrine sanctioned by this court in the case of *Henry* v. *Dufilho.* It was said in that case, which was one of slander of title, that the plaintiff was bound to show malice in the defendant. If it appeared that the defendant had no color of title when he instituted his petitory action, malice might, perhaps, be inferred from that circumstance. But the evidence showed he had purchased the land in good faith, and had every reason to believe himself the owner—so that this case narrows itself to the single point, whether a plaintiff, who has reasonable ground to believe he has a good cause of action, is liable to an action of damages, where he discontinues or loses the case. The question carries its own answer.

In the case now before the court, if there was any slander of title, it consisted in asserting or pretending, not by suit, but in conversation, that the defendants were owners of the land in virtue of this contract, and that the plaintiff was not. According to the doctrine settled in the case referred to above, if the defendants had sued to compel a conveyance, alleging themselves to be the owners by purchase from the plaintiff himself, they could not have been made to pay damages in case of failure, without showing malice ; nor *a fortiori* can they be so, when simply asserting the same in conversation, or setting up such pretension by way of reconvention.

The principal object of such a suit, according to the Spanish law, from which we derive it, is to quiet titles,· or to compel the defendant either to waive all right, or to institute a suit and thereby enable the plaintiff to make good his title. Whenever there is a waiver of title, that object is attained. "The object of the law," says this court in the case of *Livingston* v. *Heerman*, "was to protect possession; to give it the same advantages when disturbed by slander as by actual intrusion; to force the defamer to bring suit, and throw the burden on him of proving what he asserted." 9 Mart. 714.

After the waiver of title on the part of the defendants, and, necessarily, of their reconventional demand, nothing remained to be tried but the naked fact, whether the defendants had ever claimed the plaintiff's title ; and the court, in our opinion, erred in refusing to give effect to the formal waiver, and in refusing leave to discontinue the claim of title set up in the answer.

It appears to us manifest, from all the facts of the case, that when the plaintiff instituted this action, his object was to obtain a disclaimer of any right on the part of the defendants. The defendants, on the other hand, were then disposed to hold the plaintiff to this bargain. But it appears in evidence, that the property began to fall in value ; and when, at last, the defendants concluded to abandon, the plaintiff complained of the depreciation, and demanded heavier damages. The relative position of the parties was changed, and the war was not what might have been expected from the manifesto. Under these circumstances, it is difficult to say which party was best entitled to damages. The defendants had, at the inception of the suit, a promise to sell, which protects them, in our opinion, from the charge of slandering the plaintiff's title in a legal sense, because it shows the absence of malice, although the defendants may have been mistaken as to the legal extent of their rights. As the case now stands, the title of the plaintiff is as much quieted by the disclaimer, as if judgment had been pronounced against the defendants in a petitory action. Being of opinion that the plaintiff has no cause of action, it is useless to remand the case for a new trial.

It is, therefore, ordered and decreed that the judgment of the

Parish Court be reversed, and that ours be for the defendants, with costs in both courts.

· Canon and Grymes, for the plaintiff.

Micou and L. Peirce, for the appellants.