## No. 11,422.

STATE EX REL. A. LEHMAN & CO. VS. HON. FRED. D. KING, JUDGE OF THE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, ET AL.

1. The contention is not well founded that a judge of the Civil District Court who grants prior to allotment an order of injunction, in so doing, exhausts his power over the order and is without authority, subsequently and prior to allotment, to modify or rescind the same. Until allotment he, for legal purposes retains control of his own order.

2. Where such a second order has been granted and it is sought to have the same reviewed under writ of *certiorari*, the judge of the particular division of the court who has at the time of the application for the writ, control of the case by allotment is the proper judge with whom to test contradictorily the order complained of.

3. It is a general but not an inflexible rule that prior to the modification or rescission of an order of injunction, notice should be given to the party who obtained the writ. Where the rule is departed from, it is proper that such notice should be subsequently given, to the end that parties may guard their interests and rights.

4. The powers of the Supreme Court, under Art. 90 of the Constitution, are not confined to writs of *certiorari*, prohibition, *mandamus* and *quo warranto*, but extend to other remedial writs.

5. Parties complaining of an order " suspending until after hearing" a prior order of injunction must, before invoking the supervisory powers of the Supreme Court, have unsuccessfully sought to have the "suspending" order rescinded. Where a restraining order is sought pending an examination of issues submitted for examination, the whole case should as far as practicable be placed before the court.

6. Where the United States Marshal (under writs of *fi fa* from the Circuit Court of the United States, directed against a lessee), having seized the "right of occupancy" of certain premises, has (with the consent of the lessor and the receiver of the lessee appointed by the Civil District Court) granted to a third person the right of occupying the premises on paying rent, until a sale under the writs, a creditor of the lessee subsequently attaching the "right of occupancy" of the same premises, in the Civil District Court, can not oust such person from his occupancy by *ex parte* injunction proceedings directed against him alone, nor is he entitled to a suspensive appeal from an order suspending until hearing, an *ex parte* prior order of injunction which would have accomplished that result

APPLICATION for *Certiorari, Mandamus* and Prohibition.

*Dinkenspiel & Hart* for the Relator.

*Lazarus, Moore & Luce* for the Respondent.

The opinion of the court was delivered by

NICHOLLS, C. J. Relators represent that on January 1, 1894, they applied to the Hon. N. H. Rightor, one of the judges of the Civil District Court for the parish of Orleans, in the case entitled A. Lehman & Co. *et als.* vs. Walter P. Walsh, for an injunction against said Walter P. Walsh, their petition being verified by proper affidavits.

That the said judge granted the injunction as prayed for conditioned upon relators furnishing bond in the sum of $1000, which they did furnish with good and solvent security, and the injunction was thereupon issued by the clerk of the court, enjoining and restraining the said Walsh from carrying on business in the stores Nos. 145 Canal street and 7 and 9 Bourbon street in New Orleans, and from making any use of said premises except for the purpose of preparing for the removal of the goods therein belonging to said Walsh.

That on the same day a duly certified copy of said injunction under the seal of the court was served upon the said Walsh in person.

That the said petition and application for injunction was presented to the said judge prior to the allotment of said cause as authorized by the Constitution of the State and the rules of said court; that said cause was not allotted according to the rules of said court until the following day, Tuesday, January 2, 1894, when same was allotted to Division "B" of said court, presided over by Hon. Fred. D. King.

That at about the hour of 11 o'clock A. M. on said Tuesday, January 2, 1894, and before the allotment of said cause, the following order was endorsed on said injunction served upon the said Walsh, to-wit:

"Upon representations of H. L. Lazarus and a full statement of the facts, the writ issued herein is suspended until the further order of the court and after hearing. New Orleans, January 2, 1894.

    (Signed)              "N. H. RIGHTOR, *Judge*."

That said copy of injunction with the said order endorsed thereon was thereupon filed in the clerk's office of said Civil District Court. That said order of January 2, 1894, was rendered without notice to relators, without any hearing of any kind, and they did not know of same until after it had been filed in the clerk's office as aforesaid.

That as soon after the allotment of said cause as possible relators appeared before the said Hon. Fred. D. King and asked for a suspensive appeal from said order, tendering a bond with good and solvent security in any amount to be fixed by the court, but on January 3, 1894, the said Hon. Fred. D. King refused said appeal as prayed for. That said order of January 2, 1894, is absolutely null and void and without effect, for the following reasons:

1. That in advance of the allotment of said cause the said Hon. N. H. Rightor had no right or authority to act in said cause—the granting of the preliminary writ of injunction having exhausted his authority in the premises.

2. That said order was rendered without notice and without hearing of any kind.

3. That said order purported to be rendered because of the presentation to the court of certain facts—and an order regularly granted can not be set aside by the court upon matters of fact until final hearing of the cause.

That under the Constitution of the State and the rules of said Civil District Court the granting of a preliminary writ by any judge of said court prior to an allotment does not in anywise affect the control of the cause by the judge to whom same may be allotted after the allotment, and therefore the said Hon. Fred. D. King, presiding judge of Division "B" of the Civil District Court, is alone competent to deal with said cause and is the only one of said judges against whom the process of this court may be directed as to said cause.

That relators are entitled to writs of *certiorari*, prohibition and *mandamus* to the end that said proceedings be enquired into, the execution of said order of January 2, 1894, restrained, and an appeal given the relator therefrom; the said writs to be operative in their order, so that if the writ of *certiorari* be granted and made peremptory the other writs will be unnecessary; or if the writ of *certiorari* be finally refused and a writ of prohibition granted the writ of *mandamus* will be unnecessary, and if both the writs of *certiorari* and prohibition be refused or set aside after final hearing that then the writ of *mandamus* be made peremptory.

In view of the premises, relators' prayer was that a writ of *certiorari* issue directed to the Hon. Fred. D. King, judge, commanding him to transmit the original record in the suit of A. Lehman & Co. vs. No. 41,200, Walter P. Walsh; that the validity of said order of January 2, 1894, may be enquired into and that said writ also be directed to the said Walsh, prohibiting him from acting under said order of January 2, 1894, and that in due course of law the said writ be made perpetual and said order annulled and set aside. Under the restriction before stated they prayed for a writ of prohibition directed to the said judge, enjoining him from enforcing or acting under said order of January 2, 1894, and that in due course said prohibition be made perpetual.

Under the restriction before stated they prayed for the issuance of a writ of *mandamus* commanding the said judge to grant a suspensive appeal from said order of January 2, 1894.

They prayed that Walsh be served with a copy of the proceedings.

This court ordered that a writ of *certiorari* issue and that the respondents show cause why the writs of *mandamus* and prohibition should not be granted as prayed for, but refrained from issuing any restraining order in the premises, for the reason that the petition

utterly failed to disclose, as it should have done, the character of the proceedings in the court below or the facts and circumstances of the case in which an intervention was asked. We were inclined, for this reason, to refuse relators' application in its entirety.

In the answer filed by the judge of Division "B," he states that he transmits not only the record in the case of A. Lehman & Co. vs. Walter P. Walsh, but other original records and copies incident to and connected with the litigation growing out of the seizures and attachments against the Runkel-Hoerner Company, Limited, in suits pending in the various divisions of the District Court for the parish of Orleans, and liquidation proceedings in which liquidators and re-ceivers have been appointed and various orders granted therein; that he transmits and makes part of his answer the said records for the reason that they are part of and concern the same litigation of which the injunction sued out by A. Lehman & Co. *et al.* is but a part, and that said records show that all the attachment proceedings and cases, including those by relators, were transferred to and cumulated with the liquidation proceedings.

He avers that all the orders granted by him and the Hon. N. H. Rightor in the case aforesaid are legal and valid, and that relators are not entitled to a writ of *certiorari*.

That his own refusal to grant a suspensive appeal from the order suspending the injunction in the case of A. Lehman & Co: *et al.* vs. Walsh does not entitle relators to writs of *mandamus* and prohibi-tion.

That the records transmitted show that an order of injunctiont was granted in the said case of Lehman & Co. *et al.* vs. Walsh by the Hon. N. H. Rightor, judge of Division "D," and that subsequently the said judge before the allotment of the case suspended the operation of said injunction by a written order to that effect on the same day that the injunction was granted.

That the injunction granted was not a matter of right, and was within the discretion of the judge to whom the application was pre-sented to refuse or grant the same, and that before the allotment of the case the judge who originally granted the writ had the right to either revoke or modify the same, such order being entirely within his control and power of modification or revocation.

That said judge having the authority previous to the allotment of the case to modify or revoke such order, could modify, revoke or

168 SUPREME COURT OF LOUISIANA.

State ex rel. Lehman vs. Judge et al.

suspend the same, either upon a representation of facts made to him or without such representation, and could do so either with or without notice to the parties in interest and a contradictory trial upon the question whether the injunction should be suspended.

That the judge had the absolute power to revoke or modify this class of injunctions, and to hold that he could only do so after notice and hearing of the parties upon the question of fact presented for the issuance of the injunction, would be to deny his discretion and power to revoke or modify the order of injunction, and would deny him the power to set aside an injunction improvidently granted until after the delays which are always usual in rule, contradictorily granted, and the trial thereof, and would result in the party enjoined suffering all the injury resulting therefrom pending the trial and decision on any rules which might be taken.

That the said judge having the absolute power to revoke or modify the said order of injunction, the exercise of such power is not affected by the fact that he states in the order that he does so upon the statement of certain facts made to him, but the question is whether upon the face of the petition as presented, the case was of such a character as authorized the judge either to grant or refuse the injunction. That to hold that the judge who originally granted the injunction had no right or authority to set it aside, would be to hold that an injunction, no matter how improvidently granted, would have to stand until allotment was made.

That in the order suspending the injunction the judge made such suspension (as shown in the order) until further orders of court and after further hearing.

That under the said order of suspension, relators had the right and were reserved the right to apply and move for reinstatement of the original order of injunction, and that he, the respondent judge, had been ready at any and all times to receive and consider such application, but that no such application had been filed by relators. That the Hon. N. H. Rightor having granted the original order of injunction and having suspended the same, and the case having been subsequently allotted to respondent and an application for a suspensive appeal having been made, respondent in his discretion refused such suspensive appeal, and relators are not entitled to a *mandamus* to compel the granting of the same, as the granting of the injunction and the modifying of the same was within the discretion of the Civil

State ex rel. Lehman vs. Judge et al.

District Court, and to grant a suspensive appeal would be to control that discretion and to reinstate an injunction which the lower court had in its discretion decided should be revoked and suspended.

That the injunction sought by relators was in its nature mandatory, as while the injunction is directed against the defendant, Walsh, to restrain him from using and enjoying the possession of the premises, still, if reinstated, it would have the effect of ousting him from a possession which relators admit he now has.

That the injunction being thus mandatory in its nature should not be issued until after legal trial upon its merits. The respondent judge relies upon the case of State *ex rel.* Koehl vs. King, 45 An., recently decided by this court, as supporting these views.

An examination of the petition of relators, upon which they obtained the order of injunction, shows that they averred that they were creditors of the Runkel-Hoerner Company, Limited; that under writs of attachment they had seized certain property of that company, including especially the leases and rights of occupancy of the premises Nos. 145 Canal street and 7 and 9 Bourbon street, in the city of New Orleans, which leases and rights of occupancy were worth about $25,000. That unless they are able in due course of law to sell and realize upon said leases and rights of occupancy all their claims against said company will not be paid in full. That W. P. Walsh, a resident of New York, temporarily in New Orleans, had taken possession of said premises without right or authority and had announced his intention of carrying on business in the same, commencing on Tuesday, January 2, 1894. That they would be irreparably injured should he be allowed to continue the possession and use of said property, and that they have no relief save in the equitable writ of injunction. That when Walsh purchased the contents of said stores he was notified that he would have a reasonable time, not exceeding two weeks, within which to remove said goods from said premises, but that he had announced his intention of carrying on business and selling said goods regardless of said notice and regardless of their rights and those of other creditors of the said company.

Their petition closed with the prayer that an injunction issue enjoining and restraining Walsh, his agents, clerks and employés from carrying on business in the said premises and from making any use of the same except for the purpose of preparing for the removal therefrom of the goods therein belonging to him. That after due

170 · SUPREME COURT OF LOUISIANA.

State ex rel. Lehman vs. Judge et al.

proceedings the said injunction be by judgment perpetuated, with reservation of their right to sue Walsh for whatever loss or damage they may have sustained by reason of his retention or occupancy of the premises.

The allegations of this last petition, like those of the petition in the present proceeding, are exceedingly indefinite. They do not set out all the facts of the case, and we are forced to gather these facts, as best we may, from the various records or fragments of records which the respondent judge has sent up.

The answer of the respondent, Walsh, verified by the oath of one of his attorneys, makes the following allegations:

Respondent would for further answer state the facts in connection with this litigation—a litigation of which the injunction sued out by A. Lehman & Co. *et al.* was but a branch or incident.

Respondent shows that in the cases styled Sweetser, Pembroke & Co. vs. The Runkel-Hoerner Company, Limited, and the H. B. Claflin Co. vs. The Runkel-Hoerner Company, Limited, attachments were issued from the United States Circuit Court for the Fifth Circuit and Eastern District of Louisiana, and levied upon the stock of merchandise and fixtures contained in the premises now occupied by your respondent; that subsequently suits were instituted and provisional seizures issued in the cases styled Joseph R. Mitchel vs. Amos Runkel, and Mrs. Sarah E. Atkins vs. Amos Runkel in the said United States court, on demands for rent, in the former case of the Bourbon street premises and in the latter case of the Canal street store now occupied by your respondent; that judgments were obtained in the United States court recognizing the lessor's privilege and pledge upon the stock of merchandise and all movable effects in said leased premises; that the same were sold at marshal's sale under said judgments and writs of *fieri facias* issued thereon on the 26th day of December, 1893; that previous to the sale A. Lehman & Co. filed interventions in the cases of Sweetser, Pembroke & Co. and the H. B. Claflin Co. vs. the Runkel-Hoerner Company setting up that the attachments issued therein should be dissolved on account of liquidators having been appointed in the State court and all the property and effects of the Runkel-Hoerner Company having been ordered to be placed in the possession of said liquidators and receivers, collusion, etc. ; that the said interventions and attachment cases of Sweetser, Pembroke & Co. and the

NEW ORLEANS, FEBRUARY, 1894.                171

State ex rel. Lehman vs. Judge et al.

H. B. Claflin Co. were regularly put at issue and tried, and judgments were rendered maintaining said attachments and dismissing the interventions—the seizures under the attachments having been made prior to the appointment and qualification of liquidators and receivers; that at the said sale by the United States marshal respondent purchased the stock of merchandise and fixtures for a sum exceeding $50,000 and paid cash therefor; that at and during the sale of said stock and after the marshal had announced the terms thereof, G. Lehman, of the firm of A. Lehman & Co., asked the marshal whether the purchaser would be allowed to occupy the premises after the sale, and that the marshal responded that the purchaser would be allowed to have possession of the premises for two weeks or possibly longer, and that if he continued any longer he would have to obtain the consent of the landlord or parties interested; that in the said suits of Sweetser, Pembroke & Co. and the H. B. Claflin Co., and under the attachments issued therein, the right of occupancy now in controversy was seized by the United States marshal; that in the said suits in the United States court the liquidators appeared and filed exceptions setting up that on account of the Runkel-Hoerner Company having gone into liquidation the attachments should be dissolved, which exceptions were overruled by the court and final judgment rendered in said cases in favor of Sweetser, Pembroke & Co. and the H. B. Claflin Co., and against the defendants and the intervenors, A. Lehman & Co. *et al.*, the appointment and qualification of the liquidators being subsequent to the attachment and seizures thereunder in the United States court; that subsequent to the purchase by respondent of the said stock of merchandise and fixtures A. Lehman & Co. *et al.* appeared in the United States court and took a rule upon the United States marshal and respondent to show cause why they should not vacate the premises now occupied by respondent; that subsequently under the attachment proceedings in the Civil District Court for the parish of Orleans, Division A, wherein the said A. Lehman & Co. *et al.* have secured attachments, the said parties took a rule upon the defendant, the Runkel-Hoerner Company, to show cause why the right of occupancy should not be sold in their case as perishable, and that said rule was discharged, the judge of *Division A* transferring all the attachments in his said division to *Division E*, in which division the liquidators and receivers had been appointed and qualified for the Runkel-Hoerner Company.

Respondent avers that he is occupying the said premises under permission from the United States marshal and under agreement with the liquidators and receivers of the Runkel-Hoerner Co. to pay the same rent that was agreed to be paid prior to the institution of said attachment proceedings against said company, and also with the consent of the landlord and original tenant, Amos Runkel, and with the understanding that when the right of occupancy of the leased premises was sold respondent would vacate the premises. That relators were absolutely without right to enjoin respondent from occupying or enjoying the premises, and they could suffer no irreparable injury by reason of the refusal to grant the injunction, or suspend the same after its granting, leaving out the question as to the granting or suspension of the same being within the discretion of the judge of the lower court.

In their petitions of intervention and third opposition filed in the United States Circuit Court on the 21st December, 1893, in the Sweetser, Pembroke & Co. and the H. B. Claflin Co. cases, relators averred that on the 13th November, 1893, writs of attachment issued in these cases under which the United States marshal took actual possession of the movable property of the Runkel-Hoerner Company contained in No. 145 Canal and Nos. 7 and 9 Bourbon streets, and that the same was at the time of the filing of said opposition and had been since the 13th November in his possession; that on the next day and at subsequent dates they had obtained writs of attachment, some in the Civil District Court, others in the First City Court, under which writs the said property was seized by the civil sheriff and the constable by notices of seizure served upon the defendant and the United States marshal, the last named notices being accompanied by service of a petition with interrogatories and citations, it being impossible for the sheriff and constable to make a physical seizure of said property owing to the fact that the same was under the control of the marshal.

The injunction proceeding below having been assigned to and being lodged in Division "B" of the Civil District Court when relators' petition was filed here, the judge of that division is the proper one with whom contradictorily to test by *certiorari* the order of Judge Rightor complained of. The fact that that judge has not made the answer or return in this case has left us without knowledge of the reasons which induced him to suspend the original order he had granted.

We think it quite likely that when he did so he was under the impression it had not yet been executed. It may be that the judge having had his attention directed to the fact that the first order had been granted on the 1st of January was doubtful as to the legality of that order, and of any action to be predicated on it, or that under the facts of the particular case, the injunction being an incident of prior existing litigation in other divisions, he may have conceived that the parties should have addressed themselves to some other judge. Whatever his reasons we do not think that from the standpoint of "power" the second order can be successfully attacked.

Relators selected the particular judge for the granting of the injunction—they maintain here that his original action was valid and legal. If so the judge did not exhaust his powers in the premises, but retained control of the proceeding up to the allotment of the case.

In State *ex rel.* Buisson vs. Lazarus, Judge, 33 An. 419, as in Mengelle vs. Abadie, 45 An. 678, this court said that "the power to issue the writ when vested in a judge implies that of dissolving it," and in the former case we maintained the right of the judge who had granted an injunction in the absence of the particular judge, to whom it had been allotted, to rescind the order.

It certainly was never contemplated,. and we could not hold that an *ex parte* order of a judge which might have been improvidently granted, which might in fact be an absolute nullity, working the greatest injury, should be forcedly given full effect to until it could be set aside by regular proceedings with the usual notices and delays by the judge to whom the case would be ultimately allotted. Black on Judgments, Vol. 1, Ch. 14, Secs. 297, 308. .

The power to rescind or modify is something other and different from the rightful exercise of the power either as to the manner in which the rescission or modification was made or as to its correctness.

In State *ex rel.* Moore vs. Judge, 37 An. 119, we said that "it was well established as a rule that notice to dissolve an injunction should be given to the party who obtained the writ," but we immediately added "although in extreme cases the judge, in his discretion, may dissolve at chambers and *ex parte.*"

In Baldwin vs. Bellocq, 35 An. 983, we said: "There is no doubt that a judge has the right and power on an *ex parte* application in a case of urgency to dissolve an injunction on bond, but in such in-

stances the dissolution being at the risk of the mover will be rescinded on a proper showing of error either in the lower or appellate court, and the matter reinstated to be proceeded with contradictorily. It is decidedly preferable that such course be pursued where circumstances will allow.''

These authorities show that a legal ''power'' exists in a district judge to dissolve even, ''*ex parte*'' orders of injunction which he has granted, though the power, it is stated, must be very carefully and cautiously exercised.

The duty of the court to give ''notice'' at once to parties in interest of the action so taken is referred to in State *ex rel.* Moore *vs.* Judge, 37 An. 118, and is manifest. The action itself is of course subject to review and supervision in proper cases, through remedies varying under different circumstances.

It is claimed that *ex parte* orders for the rescission of even *ex parte* injunctions are unauthorized; that great and irreparable injury would necessarily follow from such a practice. Cases can be easily imagined, however, where an *inflexible rule* that such orders should continue in force until contradictorily vacated or modified, might be productive of still greater wrong and injury.

We think the rights of all parties are fairly guarded and protected in this State under the discretionary powers of the district judges over such questions, supplemented, as they are, by the supervisory control over inferior tribunals which has been given to this court.

Our powers under Art. 90 of the Constitution are not limited in proper cases to writs of *certiorari*, prohibition, *mandamus* and *quo warranto*, but are expressly declared by that article to extend to other remedial writs.

In State *ex rel.* Murray vs. Judge, 36 An. 578, we said that this court could issue a restraining order which would have the effect of an injunction asked for but refused below, and issue a *mandamus* directly to the district judge to allow the injunction *in limine* whenever a proper state of facts is presented and all the requirements of the law have been complied with; that it was manifest that cases might be presented in which justice and reason required that some mode should exist of redressing at once the wrong or abuse of power of the district judge, even if there be other means of relief, if the slowness of ordinary legal forms would produce such a delay that the administration of justice might suffer from it.

We do not propose to enter here into any extended examination or discussion of "judges'" orders, "court" orders, of orders rendered "*ex parte*" and those "contradictorily" obtained. It suffices to say that the order first granted herein by Judge Rightor was not technically a judgment (State *ex rel.* Behan vs. Judges, 35 An. 1077, 1078), and even though it should not have been properly suspended the error was not covered or reached by a claim that there is an absolute want of power in a district judge to *vacate or modify ex parte under any circumstances any order of injunction* which he had previously rendered. It is not legally essentially necessary that such orders should in all cases be modified or vacated contradictorily with those in whose favor they have been issued. It is not true that the mere failure to give prior notice to such parties would carry with it, as the inevitable consequence of that fact, the absolute nullity of the modifying order as for want of *legal power* in the judge over the whole subject matter. Black on Judgments, Ch. 1, Sec. 1, p. 5; Ch. 14, Secs. 297 and 308; Craddock vs. Croghan, 1 Sneed (Ky.) 100; Clagget vs. Simes, 25 N. H. 402.

We are next to enquire whether in the exercise of his "power" of *ex parte* revocation or modification the judge has applied the power to a particular case in which he was not legally authorized to do so, so as to authorize a review of his action through the instrumentality of a writ of *certiorari*.

We understand relators to claim that there is a CLASS OF CASES such as leave no discretion in the district judge to determine whether he would or would not grant an injunction asked when the facts are properly alleged and sworn to, and that the present case falls under that class. That the same reasons which withdraw from him in that class of cases all discretion as to granting the injunction also withdraw absolutely from him the authority to modify or revoke *ex parte* the injunction which he has directed to issue. The fact that a particular case, when properly presented to a judge, may be of such a character as to make it his duty to issue an order of injunction does not exact that the injunction should necessarily be continued until final hearing. Whilst the injury complained of may justify an injunction it may not be such as to work irreparable injury. The judge, therefore, even in such cases, has some power of action in the matter. It may be that he would not have the authority for any reason dependent upon the merits of the case to definitively dissolve the in-

junction, but he would have the right to entertain and act upon an application to dissolve on bond, and it would not be essentially necessary, as we have said, though generally right and proper to have the same disposed of contradictorily. The falling of a particular case under the class referred to would not necessarily be determinative of the question of the legality of notice prior to action. Whether in such case the judge would have acted legally in proceeding *ex parte* would depend upon its particular facts and the grounds upon which the action was based.

In dealing with that question the fact must not be overlooked that the modification or revocation of the order may be grounded on causes extrinsic to the merits of the injunction. The judge, for reasons entirely independent of the merits, may reach the conclusion that the order of injunction was improvidently and illegally issued by him, and we should, if possible, be advised of those reasons by parties who, appealing to our supervisory powers, seek at our hands a restraining order pending the examination of the issues submitted to us. They should, as far as practicable, place the whole case before us. We consider such a requirement conservative—tending to secure the rights of all parties and to further the proper administration of justice by enabling us speedily, through the reasons assigned below by the district judge, to come to a correct knowledge of the situation and to act advisedly.

In the present case relators did not exhaust their remedy in the court below nor seek the obvious relief which was directly before them and which they could doubtless have speedily obtained there if entitled to the same. (State *ex rel.* Shakspeare vs. Judge, 40 An. 607; State *ex rel.* Waterworks vs. Levy, 36 An. 944).

The order of injunction granted was not absolute. Defendant was enjoined "until further orders of the court." The second order was not absolute—it suspended the injunction "until further orders of court after hearing." Relators took no steps whatever to have the suspending order revoked or to obtain the hearing reserved and obviously tendered, but applied at once for a suspensive appeal, following the refusal thereof by this application to us. The second order was not a denial of the injunction. It merely postponed matters for a short period to enable the replacing judge to advise parties whose right to be heard was surely as great as that of the relators' to be heard, of the pending application so as to guard their interests.

State ex rel. Lehman vs. Judge et al.

We think that under the circumstances of this case, relators, before making an appeal to us, should have *applied at least* for the revocation of the order complained of. In some States such a prior application for the revocation of an order complained of is made a condition precedent to the granting of even an ordinary appeal. See Bostick vs. Knight, 40 N. W. Rep. 345; Black Hills Flume & Min. Co. vs. Grand Island & W. C. R. Co., 51 N. W. Rep. 341, 342, 343, 345.

We have ourselves established as a rule of practice that applications to us for relief against the actions of a court charged as being in excess of power and usurpations of jurisdiction would not be generally entertained unless exception had been made below to the want of power or jurisdiction and the same had been overruled.

We do not know upon what grounds Judge Rightor acted in this matter, and as he might have been authorized and justified for a number of reasons which we can readily imagine, in giving the second order, we can not set it aside in this proceeding.

Relators complain that even if the second order were not reviewable by this court under its supervisory powers, they were entitled to appeal suspensively from the same, and this appeal was unjustifiably refused.

It would appear that the Runkel-Hoerner Company were the lessees of the premises Nos. 7 and 9 Bourbon street and No. 145 Canal street, and had therein a stock of merchandise. That on the 13th November, 1893, under writs of attachment issuing from the United States Circuit Court at the instance of several creditors of that company, the stock of goods mentioned and the right of occupancy of the said premises were seized, and the premises and stock of goods were taken possession of by the marshal. That upon the next day (November 14) the company went into liquidation in Division "E" of the court, and receivers or liquidators were appointed by and confirmed in that division. That on the 14th November, 1893, and at various dates since, under writs of attachment issuing from the Civil District Court for the parish of Orleans, the same property, with the right of occupancy, was seized by the civil sheriff of the parish through notices of seizure served upon the marshal, the notices being accompanied by service of petitions with interrogatories attached; actual possession of the property not having been taken by reason of the prior holding of the same by the marshal.

That subsequently, under proceedings taken out in the United

12

States Circuit Court by the lessors of the premises occupied, the stock of goods was sold at public auction and was purchased and taken possession of in the premises by one W. P. Walsh. That Walsh still occupies the stores with the goods purchased by him, and is duly selling the same therein. That the seizures made by the marshal are still in full force. That the occupancy of Walsh is under the consent and with the permission of the marshal, the receivers and the landlord, and that Walsh recognizes that it will terminate upon the sale of the right of occupancy, and admits that it will be his duty to vacate the premises upon the happening of that event. Furthermore, that all the various suits and attachments connected with the company have been transferred to and are now before Division "E" of the Civil District Court, where the proceedings in liquidation of the Runkel-Hoerner Co. are still pending.

Relators have not explained to us in their brief how their interests would be prejudiced by the temporary occupancy of the premises by Walsh under the circumstances, nor how they would be advanced by having the injunction maintained. The premises are still in the possession of the marshal, under seizure, and if he chooses (particularly if the landlord and receiver consent) to permit Walsh to act as a *quasi* keeper or tenant, we do not see either the interest or the right of the relators to have him ousted by *ex parte* proceedings directed against him. Railroad Company vs. Railroad Company, 36 An. 561.

For the reasons herein assigned it is ordered, adjudged and decreed that the provisional orders and writs be set aside and relators' applications be rejected at their costs.