Statement of the Case.
NICHOLLS, C. J.
Application for writs of certiorari, prohibition, and mandamus.
The relator in this case filed in the district court for the parish of St. Tammany a petition in which it alleged that it was the lawful owner and in the legal and actual physical possession of certain property, which it described, under titles which it set out, one of which was a title acquired from James B. Rosser, who it alleged had purchased a part of the same from the state of Louisiana under the provision of section 3, Act No. 80, p. 89, of 1888, as per auditor’s deed of the 3d of July, 1903, duly registered in the conveyance book of the parish of St. Tammany; and another a title from Joseph D. Taylor by act of the 13th of July, 1903, also recorded in the parish of St. Tammany.
It averred: That on Sunday, the 18th of July, 1903, it being then, and having been previously, in actual, quiet, and peaceable possession of said property, and while its officers were engaged with their employés in inspecting the same, especially the sawmill, its machinery, boilers, saw, etc., assisted by a wheelwright and engineer, with a view of ascertaining what was necessary *964 to be done to place said sawmill in complete and perfect running order, they were disturbed, annoyed, and harassed by the sudden appearance of one Thomas P. Crawford, who rudely and boisterously proclaimed himself a deputy of Thomas E. Brewster, sheriff of the parish of St. Tammany, announcing in the presence of said officers and employés at the same time that he had all of said property under seizure, and announcing further his intention of tearing down notices, which it had placed in conspicuous portions of the property, warning parties not to trespass on the same, nor to cut, destroy, or remove any part of the timber, • and his intention of closing the houses by nailing up the doors and openings. That he ordered said officers and employés to desist from asserting any further pretensions or claims to the property, or right in and to the possession of the same, and threatened them with arrest and prosecution for any violation of his orders. That he nailed up on special places on the land notices to the effect that he had charge of same, and forbade any one to move or molest anything on the place, or to move into any of the houses.
That said Crawford, though called upon to produce any authority for such action, failed so to do, nor could he inform said officers and employés in whose behalf he was acting. That said Crawford did various other acts and made various declarations as to his authority in the premises, all of which were illegal, and greatly to the company’s damage and injury. That they were in law a trespass upon the property, and an illegal deprivation and dispossession of the same by petitioner. That this was maliciously done; and that, unless enjoined by a writ of injunction, he would continue to trespass and interfere with it and its officers and employés to its irreparable damage and injury.
It prayed for a writ of injunction directed to said sheriff, prohibiting, restraining, and enjoining him, his deputies, agents, or employés, from in any manner interfering with or hindering its officers or employés or assignees in the full, complete, and unrestrained possession, control, and enjoyment of all said property, and that, after due proceedings had, said injunction be perpetuated, with damages.
The district judge, then absent on leave, had been temporarily replaced by Judge F. D. King, one of the judges of the civil district court for the parish of Orleans. Acting under the order so assigning him to duty, Judge King granted the following order: “Considering the allegation in the petition of plaintiff’s possession of the property in order to maintain the status quo until the return of the district judge, and without prejudice to any writ of fieri facias against other parties in the hands of the sheriff of St. Tammany, let a preliminary injunction issue herein, to be in force only and until the said judge of the district can act in the case on or before the second Monday of October, 1903, enjoining and prohibiting the said Thomas E. Brewster individually and as sheriff, and any of his deputies, from interfering with plaintiff’s possession, use, and enjoyment of the property described in its petition and in the tax deed to plaintiff’s vendor upon petitioner’s giving bond in the sum of one thousand dollars, subject to be increased on application if deemed necessary.”
The bond was furnished, and an injunction issued. A few days later Mrs. Jules F. Peytral, dative testamentary executrix of the last will of Edward S. Benton, and his forced heir, and Mrs. Rachel S. Benton, widow in community of said Benton, presented to Judge King a petition ofp Intervention proceeding, alleging that the succession of Benton was the true and lawful owner of said property, and denying that the plaintiff was the owner thereof; that it was not claimed in its petition that it had been in possession for one year. They alleged that it had never been in possession thereof. They further alleged thát on June 3, 1900, there was entered an order by the district court for St. Tammany parish in the matter of the succession of Benton directing a judicial sequestration of said lands; that on said order a writ of judicial sequestration issued, directed to the sheriff of the parish, commanding him to sequester said property, and take same into his possession; that under said writ the sheriff did take actual physical possession of the same, and appointed a keeper thereof; that motions to dissolve and to bond such sequestration had been made (in the matter of the succession *966 of Benton), but were denied by tbe district ■court; that on appeal to the Supreme Court in that matter it affirmed the judgment of the district court, and ordered the judicial sequestration to be maintained, as would appear by the case reported as “Succession of Benton” in 106 La. 494, 31 South. 123, 59 L. R. A. 135. It was further alleged by the interveners that if plaintiff, the Honey Island Land & Timber Company, had taken possession of said property, it was a mere trespasser, and as such had no standing in court; that it could not set up its trespass ■ and violation of a writ and order of court as a ground for the issuance of a writ of injunction, and that the acts set up by the plaintiff amounted to a contempt of court, and that company could not set up the same as a basis for an injunction, even if the facts were as stated; that its officers knew at the time and before it acted as it had of the writ of sequestration which had issued in the matter of the succession of Benton, and of the judgment of the Supreme Court maintaining the same. Interveners prayed that the writ of injunction be set aside, and the sheriff ordered to continue in possession under the writ of sequestration, or, in the alternative, that plaintiff in injunction be required to furnish bond in the sum' of $30,-000.
Upon being informed of the intervention, the Honey Island Land & Timber Company immediately filed exceptions to the filing of the intervention and consideration of the same by the court on the ground that • interveners could not attack its title in such a collateral, irregular, and illegal manner, but should be forced to proceed by means of a direct action contradictorily with it. The district judge seems to have overruled the exception, and to have set aside the preliminary writ of injunction, and ordered the sheriff, Brewster, individually and as sheriff, to show cause on the 14th of October, 1903, before James M. Thompson, the district judge,, why a writ of injunction should not issue after contradictorily hearing. Judge King, however, accorded to the plaintiff the right of visiting or going upon the property.
Thereafter plaintiff applied for a suspensive appeal from the order dissolving the injunction, and, this application having been refused, the present application was made to this court for writs of certiorari, prohibition, and mandamus.
The writ of mandamus asked for is a writ directing Judge King to grant relator a suspensive appeal from the order and judgment dissolving the injunction, which issued on the 1st of August, 1903.
Upon this application an order issued from this court directing Judge King to show cause why the writ of mandamus should not issue as prayed for.
Relator, in its petition to this court, averred that the district judge acted upon the race of the papers, and without any evidence being offered .to disprove its sworn, allegations as to title, ownership, and possession of the property, and the tortious, illegal, and damaging acts of the sheriff, causing it irreparable injury by depriving it of the full possession, use, and enjoyment of its property; that the dissolution of the writ of injunction operated to oust it from its actual possession, changing the possession from itself to the said sheriff before adjudication of the issues between the parties.
The district judge, in answer to the rule to show cause, after reciting the antecedent facts connected with the granting of the preliminary injunction and the intervention of Mrs. Jules Peytral and Mrs. Rachel L. Benton, stated that at the time relator applied for the preliminary writ of injunction the sheriff of St. Tammany parish was absent from the parish, and the writ under which he was acting had been locked up; that the record was not to be found in the matter of the succession of Benton; that, not having the writ under which the sheriff was acting, and under the belief that the property was held by him under an ordinary writ of fi. fa. issued on some judgment obtained by the parties litigant in that case, and not noticing at the time the date of plaintiff’s alleged possession, and being of opinion that the .relator was entitled to a preliminary injunction on the face of the papers, he signed the order of the 1st of August for a preliminary injunction; that later he obtained the record in the matter of the- succession of Benton, and upon an examination of the same, of the order for *968 the writ of judicial sequestration and the writ, the decision of the Supreme Court in 106 La. 494, 31 South. 123, 59 L. R. A. 135, the allegations of interveners’ petition, and article 298, par. 5, of the Code of Practice, he came to the conclusion that the writ of injunction granted relator had improvidently issued under a misapprehension of facts appearing on the face of the papers, and altered the order revoking and setting aside the injunction, from which order relator was seeking a suspensive appeal; that at the same time he issued an order to the sheriff to permit relator to visit and go upon the land, in order that it might maintain on the trial of the rule to show cause before the district judge the legality of whatever possession it had on the 1st of August; that he had refused a suspensive appeal on the ground that dissolving such injunction worked no irreparable injury; that, if the injunction was not dissolved, relator might sell the timber from the land, and remove the sawmill and machinery, between that time and the 1st of October, and that thereby irreparable injury might be inflicted upon the other parties in the suit claiming the land in case the court should eventually decide in their favor.
That when the fact was disclosed by the record in the succession of Benton that the property was held by the sheriff to await the final decision of the conflicting claims to ownership set up in said case, and that the issuing of the injunction was a setting aside of that order, and was practically permitting the plaintiff to bond the writ of sequestration, it was his bounden duty to at once revoke the injunction and recall the writ as having been improvidently issued under a misapprehension of the facts; and his right to do so was sustained by several decisions of the Supreme Court, especially in the case of State ex rel. Lehman v. Judge of Civil Dist. Court, 46 La. Ann. 163, 15 South. 283. That he based his refusal upon the ground that plaintiff could sustain no irreparable injury to suspending of said writ of injunction, and in support of his action he referred this court to the language of Judge James M. Thompson, the district judge of the district, in refusing to permit the bonding of the writ of sequestration, which was quoted and approved by it in the Succession of Benton, 106 La. 494, 31 South, 123, 59 L. R. A. 135.
Opinion.
In the brief filed in this court on behalf of relator he is placed before it as a party in the legal possession of property using the writ of injunction defensively as a means of protection against an “attack upon” its ownership and possession of real estate, and the action of the court in setting aside the injunction as having permitted the attacking party to successfully oust it and get for the nrst time in possession itself during the pendency of the judicial proceedings.
In support of its application for a mandamus commanding the district judge to grant a suspensive appeal, it cites a number of decisions of this court, in which it has been, held that an order to dissolve an injunction on bond would cause an irreparable injury in contemplation of law in case it should, operate to bring about a change of possession of immovable property, so as to entitle-the party originally in possession to a suspensive appeal; among others, Marion v. Johnson, 22 La. Ann. 512; Boedicker v. East, 24 La. Ann. 154; Jefferson & L. P. Ry. Co. v. City of New Orleans, 30 La. Ann. 970; Brown v. Brown, Id. 507; Torres v. Falgoust, 33 La. Ann. 560; Villavaso v. Barthet, 38 La. Ann. 417; State ex rel. Cotting v. Judge of Civil District Court, 104 La. 74, 28 South. 977.
The correctness of the principle announced in those cases we concede, but we do not think the facts of this case bring it under the operation of the rule. We do not find that the relator was in the legal possession, of the property when it obtained the preliminary injunction against the sheriff enjoining him from interfering with its legal possession of the same. On the contrary, the sheriff of the parish of St. Tammany was in legal possession of the property under an order of judicial sequestration issued to him in the matter of the succession of Benton, and he had been so for a long while before relator entered upon it. So far from the sheriff’s disturbing relator’s possession, it was the latter who disturbed that of the sheriff. It is doubtless true that, the sheriff not being actually present on the property on a particular day, the relator may have- *970 gone upon it and “occupied” it a day or more without contest, in the absence of the sheriff, but this mere physical occupancy is ■something other and very different from “legal possession” when it is put forward adversely to the rights of parties holding under possession anterior to their own under color of title. Physical occupancy and legal possession are not necessarily identical. A person may he held in law to he in actual possession of property, though at that time he be not physically upon it, and for that same reason another person who at that time may have been in looint of fact physically upon it was not in legal possession; and that is exactly what actually happened here. The property, at the time that relator went upon it, was in the legal possession of parties other than relator or its authors, and when it entered upon it it was a trespasser, though in doing so no breach of the peace was committed. Had the sheriff been actually on. the place when relator’s officers went upon it, and had he shown them the writ under which he then beyond doubt acted, we scarcely think relator would contend .that it could have acquired any rights by going upon the property under those circumstances. The accidental absence of the sheriff when relator’s employes went upon the place, and the accidental fact that, when the deputy sheriff arrived and found them there, he did not have the writ in his possession, does not alter in the least the legal situation. The dates of the acquisition of title from the state and from Taylor show that he could have been even in the occupancy of the property hut a very short time — a month or two at most — and that when it entered upon the latter the sheriff was in possession. The title from the state was under a conventional sale.
Relator complains very much of the court’s having permitted the intervention in the proceedings of the dative testamentary executrix of Benton and of the widow of Benton, and giving any consideration to that intervention; hut the action of the court in the premises was proper. They held such a relation to the ownership and possession of the property and to the possession of the same by the sheriff under the writ that relator should itself have made them parties defendant to the injunction, and not proceeded solely against the sheriff. They were the real parties in interest. When they appeared they did so not strictly as “interveners,” but as defendants in injunction. It is a mistake to say that they or the sheriff were attacking relator’s ownership or possession collaterally. They were doing nothing more than defend their own ownership and possession against the claims of relator advanced adversely to them.
We so held in a case brought before us several years ago from the parish of Webster. Lake Bisteneau Lumber Co. v. Nimms. 49 La. Ann. 1291, 22 South. 730.
The legal situation in this ease was not changed by the fact that relator took the initiative in' the present legal proceedings through injunction. To grant relator the suspensive appeal which it seeks would he to permit it to oust the sheriff from his legal possession of the property, and transfer it to itself pending judicial proceedings, in violation of the very principle which it invokes. We think the refusal of a suspensive appeal in the premises was correct, and the application herein made for a mandamus is refused.