Statement of the Case.
MONROE, J.
Plaintiff alleges that he is in actual possession of the E. % of S. W. % of section 7, township 17 N., range 13 W., under a homestead entry in the United States Land Office, of date September 13, 1908. He complains that defendant is slandering his title and has damaged him thereby, and he prays that he be ordered to desist from so doing and condemned to pay $200 and’costs.
Defendant filed a petition to remove the case to the United States Circuit Court, and then filed a plea of lis pendens, and then, apparently abandoning those pleadings, answered, denying that plaintiff has ever been legally in possession of the land in question, and averring that he, defendant, is now, and for 20 years has been, in possession thereof as owner, and (since the death of his wife) as owner and usufructuary.
The facts are as stated in the answer; defendant having been in actual possession of the land as owner (under a title apparently emanating originally from the state of Louisiana) since 1887. It appears that on September 16, 1908, plaintiff paid to- the United States receiver of the public moneys at Nat-chitoches the sum of $14.05, which was received “in connection with H’d original serial no. 0151,” for said land, at $2.50 per acre; that on September 19th he wrote to defendant that he had made a homestead entry of the land, and that, understanding that defendant had been for some years claiming to be the owner, he would give him time to investigate the matter; that on November 3d, defendant being in actual possession of the land, he (plaintiff) entered thereon and put up a tent, in which he lived, though he found the land inclosed by a fence, which he “supposed” was defendant’s, and which he cut in order to get in, and that he knew that defendant appeared to be(the owner, according to the parish records, which had been examined by him. Eleven days later (on November 14th) plaintiff instituted this suit, and somewhat later still (on February 23, 1909), having been prosecuted for trespass and convicted, he withdrew from the land “under threats of additional criminal prosecution,” and did not pretend to be occupying it when this case was tried in the district court. At some time during his stay on the land he built thereon a small house and barn at a cost of perhaps $500, those structures having been erected within the same inclosure where defendant has cabins which are rented to, and occupied by, his tenants. Upon the case as thus presented, there was judgment in the district court in favor of defendant, and plaintiff has appealed.
Opinion.
The object of the action of jactitation (or slander of title) is to protect possession, and “give it the same advantage when disturbed by slander as by actual intrusion, to force the defamer to bring suit, and throw the burden on him of proving what he asserts.”
Hence the action cannot be maintained by an intruder, who unlawfully enters upon property of which another is in actual possession under claim of title, unless such intruder is allowed to remain in undisturbed *123 possession for a year. Livingston v. Heerman, 9 Mart. (O. S.) 714; Dalton v. Wickliffe, 35 La. Ann. 357; Patterson v. Landru, 112 La. 1074, 30 South. 857; South Louisiana Land Co., Ltd., v. Riggs Cyprus Co., 119 La. 193, 43 South. 1003. In contemplation of law, plaintiff was not in possession of the property in question when he brought this suit, for (as has been said in another case) “he no more acquired such possession by breaking or opening the appellee’s fence and entering therein than he “would have done if he had first slain the appellee, and had, thereafter, maintained himself on the property, in defiance of the officers of the law and by force of arms.” Darby’s Heirs v. Emmer, 120 La. 692, 45 South. 551; State ex rel. Honey Island Land & Timber Co. v. King, 110 La. 962, 35 South. 181.
As to the laws of the United States relating- to the pre-emption of government land, the Supreme Court of the United States has said:
“The right to make a settlement has to be exercised on unsettled land; to make improvements on unimproved land. To erect a dwelling house did not mean to seize another man’s dwelling. It had reference ‘to vacant land,’ and it would have shocked the moral sense of the men who passed those laws if they had supposed that they had extended an invitation to the pioneer population to acquire inchoate rights to the public lands by trespass, by violence, by robbery, by acts leading to homicides, and other crimes of less moral turpitude. * * * It follows that they [the entrymenj were mere naked trespassers, making an unwarranted intrusion upon the inclosure of another.” Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 782.
The act of Congress of February 25, 1885 (Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524]), makes it unlawful for a person having “no claim or color of title, made or acquired in good faith,” to inclose the.public lands of the United States, and provides a summary remedy for the ejection of such person, but the act, by its terms, applies only to those who have “no claim or color of title, made or acquired in good faith,” and can have no application to one who has been in possession for years under a title emanating from a sovereign state. Cameron v. United States, 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459.
The judgment appealed from is therefore affirmed.