*693 Statement of the Case.
NICHOLES, J.
We are called on in this •case to construe the statute of 1906, imposing a tax on inheritances. Act No. 109, p. 173, of 1906. By the first section of that statute it is enacted:
“That there is now and shall he hereafter levied solely for the support of the public schools on all inheritances, legacies and other donations mortis causa, to or in favor of the direct descendants or ascendants of the decedent a tax of two per centum, and on all such inheritances or dispositions, or in favor of the collateral relatives of the deceased or strangers, a tax of five per centum on the amount of the actual value thereof at the time of the death of the decedent.”
By section 4 it is provided that the executor of a person deceased, after payment of his debts, shall proceed to have the amount of tax due by each heir and legatee fixed on a rule.
Section 7 of the act recognizes that in some eases an administration will not be necessary or demanded, and will not be provoked, and in such cases it provides that the legal or instituted heir, or universal or residuary legatee, shall within six months after the death of the decedent, or, should there be a will, within the same time after the discovery of the same, present to the court a detailed descriptive list, sworn to and subscribed by him, of all items of property contained in and composing the estate of the decedent, and therein shall state the actual cash value of each such item at the time of the death of the decedent, and service thereof shall be made of the tax collector, who shall have the right to traverse the same. Should the deceased have made special or particular legacies or donations mortis causa, the legatees shall also be served, and, after summarily hearing the said parties, the court shall fix the amount of tax due as aforesaid by each such heir or legatee, and shall render judgment therefor, with interest and costs, against each of them.
Mrs. Stelle Castellanos, wife of Fernand May, died in New Orleans on June 13, 1906, leaving a will by which she constituted her husband her universal legatee, and appointed him executor of her estate. The will, on the petition of the husband, was duly probated and ordered to be executed. Her succession was not placed under administration.
The wife’s estate consisted exclusively of her share of the community which existed between her and her husband.
'A detailed statement of that property appears in the transcript, from which it appears that it was made up as follows:
Interest in the firm of May & Ellis..$88,281 89
Stock other than bank stock.'.. 3,806 25
Bank stock . 27,235 50
Beal estate . 65,000 00
In the brief on behalf of the state counsel say:
“Of • this property it is admitted that the items of bank stock, $27,235.50, and of real estate, $65,000, have borne their just proportion of taxes, so that as to them the legatee has established exemption from the inheritance tax. The court will see that some contention was made in the court below on behalf of the universal legatee that the partnership interest also was in part exempt. But that position was abandoned, for the universal legatee has acquiesced in the judgment below, which, on that point, was against him. Deducting these exemptions, there remains of the community estate $92,088.14 of property which has not borne its just proportion of taxes, and as to which no exemption is made out. Mrs. May’s estate owned one-half of the community estate, and therefore was composed to the extent of $46,044.07 of property which had not borne its just proportion of taxes.
“The community estate owed debts aggregating $76,868.32 at the time of Mrs. May’s death, none of which at the time of the trial in the court below in March, 1907, had been paid. It is contended on behalf of the universal legatee that he should be permitted to impute the payment of the debts to that part of' the estate which has not borne its just proportion of taxes; that is to say, after having deducted from the aggregate the value of the property to which the exemptions applied, he proposes to deduct further the debts, thus arriving at the residue so called on which he is willing to pay the inheritance tax.
“The precise form in which this case presents itself is that of a rule taken by the legatee on the tax collector to show cause why the inheritance tax should not be paid following the process figured out above at the sum of $380.50.”
*695 There was a judgment making the rule absolute, and the tax collector appealed. Counsel urge that “the first question which arises is whether in a case like this, in which there is no administration, in which no debts have, been paid, and in which the universal legatee, or testamentary heir claims as his inheritance the whole of the property left by deceased, he is .entitled in estimating the inheritance tax to deduct from the value of the inheritance the amount of the unpaid debts of the deceased for which he is liable as heir. In the Succession of Levy, 115 La. 377, 39 South. 37, 8 L. R. A. (N. S.) 1180, the court said: “ ‘There shall also be exempted from the payment of this tax the debts of the succession.’
“But in that case there was an administration. The executors had filed and the court homologated a final account in which the debts of the succession were fixed and ordered paid, so that, when the rule was taken from which the appeal resulted, the executors had in their hands for delivery to the universal legatee an ascertained and definite residue. It was this residue alone which fell to and was taken possession of by the universal legatees as their inheritance.
“On general principles the tax applied only to that inheritance. In this ease there has been no payment of debts; no actual diminution of the estate left by the deceased. The universal legatee has succeeded her, and the debts spoken of in the record are no longer her debts or those of the succession, but are his debts. The creditors cannot proceed against the succession, for it has ceased to exist. State ex rel. Pearson v. Judge, 22 La. Ann. 61. Their rights are against the heir alone, and all his property generally is subject to them. When he comes to pay the debts, he is as likely to resort to the funds or property owned by him before the inheritance fell in as to what he inherited, or they may be remitted, or become prescribed, or be defeated, and so never be paid at all. There is an essential difference between the case of an administration and that in which the heir demands possession without an administration. In the one case an officer of the law holds the property of the succession, pays its debts and turns over the residue to the heir. In the other case, the heir receives the whole of the property as it was at the moment of the death without the payment of the debts. This difference suggests different treatment for the two cases; and the statute treats them differently. In the first case the administrator is directed to pay the debts before he proceeds to have the inheritance tax fixed. In the second the heir is directed to make up a list describing and stating the value, not of what is supposed will remain when the debts shall be paid, but of all the property composing the inheritance, and on this showing the court is directed to fix the amount of the tax. On reason, therefore, and under the terms of the statute, we submit the universal legatee owes taxes on the whole amount which he inherited, but another question arises. As has been seen, the property composing the inheritance is of three sorts: (1) Real estate, which is admitted to have borne its just share of taxation. (2) Movable property, viz., bank stock, with regard to which the same admission is made. (3) Other movable property, which had not borne its just share of taxation.
“Supposing that, for the purpose of this proceeding, the debts are to be considered as paid, out of what class of property shall the payment be imputed to be made? There is no cash in the estate, and, if the debts are to be paid out of it, some of the property must be sold. On what principle or basis of fact can the payment be imputed to one class rather than to the others, and what means has the court of predicting what property the heir will sell, or whether he will sell any property in order to raise money for the payment?
*697 “It is true, as Judge St. Paul says in bis reasons for judgment, that the heir has the right to sell whatever portion of the inherited property he sees fit in order to pay the ■debts of the succession, or it might be added for any other purpose. It is also true that he might have qualified as executor, and in that capacity, might have provoked a sale to pay debts. In that event, he would not only have a right, but it would have been his duty, to exhaust the movables before turning to the real estate, and, if he had disposed of all the property which would otherwise have been subject to the inheritance tax, leaving a residue composed wholly of exempt property, a situation would be presented with which it would be difficult for us to deal. But it by no means follows because an executor he could have selected any part of the personalty for sale to pay debts, or because as heir he can sell what he chooses for any purpose, that he is privileged to imagine a diminution of some particular item of property by an imagined payment of debts, and demand that the court shall treat as actual the fictitious residue so conceived. When an executor is considering what property he shall sell, it may be his choice will be affected by the possibility of evading in, whole or in part the inheritance tax; but it will also be affected by the fact that he or the heirs will have actually to part with the ownership of the property sold. All things being considered, it may be found profitable to forego the advantages of avoiding payment of the tax, so the state’s revenue has some protection.
“But if the party is permitted to select a bare imputation of payment with no actual sale or obligation to sell, he might as well be permitted to decide for himself whether he chooses to pay or not to pay the tax. It is impossible that the lawmakers could have deliberately intended to write the statute in such terms that it would have that effect. If the court find that the heir has such a right, it must be that the Legislature which enacted the statute was very careless or very unskillful in the use of language. The same considerations apply also to the judge’s concluding proposition that ‘to the extent he [the heir] pays off the debts of the succession out of his personal estate he acquires by a sort of purchase rather than by strict inheritance.’
“What does he purchase? Not the whole, certainly. Then what part?
“We therefore submit on the second branch that, under the circumstances of the case, the court erred in permitting the heir to treat the debts as wholly imputable to the nonexempt portion of the inheritances. If any credit at all is to be allowed for unpaid debts, it should be prorated among all classes of assets. As we submit in conclusion that, since the tax is imposed on the ‘inheritance,’ and since Mr. May has taken by inheritance the whole of the decedent’s estate, he owes tax on the whole, viz., 5 per cent, on $46.-044.07, or $2,302.20, together with interest at the rate of 2 per cent, a month under section 24 of the act, after December 13, 1906.”
Opinion.
Counsel for the state did not insist upon having the succession of Mrs. May placed under administration. He raised no objections touching the form in which the respective rights of the state and the legatee were presented for adjudication, nor does he contest the valuation placed upon the property, nor the existence to the amount stated to be that of the debts of the community. The argument which counsel presents to us in this case under the circumstances that it is presented loses the weight it might have had under other conditions. The matter submitted for decision by us is one of fact. What is the amount of the inheritance tax due by Mr. May under a state of facts recog *699 nized by all parties to be true? The tax under the express' language of the law is one upon “inheritances.”
In Succession of Stauffer, 119 La. 66, 43 South. 929, this court, referring to the tax in question, said:
“The inheritance to be taxed is therefore, under the Constitution, represented by things which have been received by the heir or legatee which have escaped or have not contributed to the support of the government.”
And, again:
“While an inheritance tax is not on the property, it is measured by the value of the property actually received by the heir or legatee.”
The tax is levied upon the theory that the heir or legatee should have in point of fact received a benefit from the inheritance which falls to him, out of which “benefit” to him a portion (as provided in the taxing law) is made to go to the state. The lawmaker deals with this matter from a practical standpoint, and not from definitions which may be applied in the abstract to the word “inheritance.” When the statute declares that the tax is levied on inheritances, it refers to inheritances which on settlement result in some “residuum” going to the heir, not to those which are absorbed by debts, which prime and stand in advance of the rights of the heirs of the succession. The heir prior to the payment of the debts of the succession may in a general way be said to have property rights in it, but, in substance, those rights are nominal until the debts have been paid. The lawmaker does not advance the claim for the tax adversely to the creditors of a succession. The state stands in the background until they are all paid. It only claims to take from the residuum left after the payment of the debts, and then only for a certain portion of the residuum falling to the heirs as their absolute property. That view of the law has been expressed on several occasions. Succession of Levy, 115 La. 378, 39 South. 37, 8 L. R. A. (N. S.) 1180; Succession of Abadie, 118 La. 710, 43 South. 306; Succession of Pritchard, 118 La. 883, 43 South. 537; Succession of Becker, 118 La. 1056, 43 South. 701.
The property which Mrs. May bequeathed to her husband was “all the property which she left at the time of her death,” and that property consisted exclusively of her share in the community .between herself and her husband. What she left to her husband was not an undivided half of the community property, but an undivided half of what would remain after the community debts had been paid. The things bequeathed to him by his wife did not really reach him therefore until after the debts of the community had been paid.
That is the precise character of a wife’s interest in the community property.
We may mention incidentally that it has been frequently decided that when a community is terminated by the death of the wife, its affairs are not to be liquidated in and through the succession of the wife opened for that purpose.
We find no error in the judgment appealed from, and it is hereby affirmed.