14 So.2d 475

Succession of WIENER.

No. 37089.

June 21, 1943.

Rehearing Denied July 13, 1943.

Eugene Stanley, Atty. Gen., and Harry V. Booth and L. L. Lockard, both of Shreveport, for the Tax Collector.

Jacques L. Wiener and Herold, Cousin & Herold, all of Shreveport, for appellees.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Willard H. Pedrick, Sp. Assts. to the Atty. Gen. (Herbert W. Christenberry, U. S. Atty., of New Orleans, and Leverrier Cooley, Jr., Asst. U. S. Atty., of Slidell, of counsel), for the United States as amicus curiae.

FOURNET, Justice.

Samuel G., William B., and Jacques L. Wiener, the universal legatees and heirs of the late Sam Wiener, Jr., proceeding under Act No. 127 of the Extra Session of 1921, as amended by Act No. 44 of 1922, ruled the sheriff and ex-officio tax collector for the parish of Caddo to fix the amount of inheritance tax due the state of Louisiana on the property bequeathed to them by their father under the terms of his will, being the undivided half interest in the property acquired during the community of acquets and gains that existed between him and their mother, who survives the decedent and owns the other undivided half of the estate.

Answering this rule, the tax collector averred the heirs owed "an inheritance tax on the *entire* community estate rather than upon the one-half interest in the community inherited by them," for in Section 402(b) (2) of the Revenue Act of 1942, 26 U.S. C.A. Int.Rev.Code § 811(e) (2), Congress has included the entire community in which a decedent had an interest at the time of his death in his taxable estate and the Louisiana Legislature, in Section 2 of Act No. 119 of 1932, provided that the estate tax to be levied in this state shall be at least 80% of the estate tax payable to the United States. (Italics ours.)

The plaintiffs in the rule then interposed a plea challenging the constitutionality of this act of Congress, as being in contravention of Section 8 of Article I of the Constitution of the United States and of the 5th amendment thereto.

The district judge, after the case was tried on an agreed statement of facts, sustained the plea of unconstitutionality on both counts, decreeing the inheritance tax due the state of Louisiana by the plaintiffs in the rule to be $8,224.09, based on the property bequeathed them by their father, that is, on his half of the community property.

The tax collector appealed from this judgment, and the United States, filing a brief Amicus Curiae through the office of its Attorney General, joined the appellant in upholding the constitutionality of Section 402(b) (2) of the Revenue Act of 1942, in the event this court concludes, contrary to the government's contention, the constitutionality thereof must be passed on.

There is no controversy between the parties with respect to the facts of the case. Sam Wiener, Jr., died in the city of Shreveport, Louisiana, on December 10, 1942, leaving a last will and testament under which his entire estate was bequeathed to his three children, the plaintiffs in this rule. All of the property and assets standing in the name of the decedent at the time of his

death were acquired by and belonged to the community that had existed between him and his surviving widow, Florence Loeb, to whom he was married on February 12, 1907, the appraised value of which, after deduction and payment of debts, succession charges, and taxes is $608,272.46. It is agreed between the plaintiffs in the rule and the respondent tax collector that if the tax is to be computed on the property received by the heirs as the legatees of their father, that is, on $304,136.23, his half of the community property, the amount of the inheritance tax due the state is $8,224.09, but that if it is to be computed on the entire community, as the tax collector contends, the inheritance tax due by them is $14,330.90.

In the year 1932, the Louisiana legislature, to obtain the benefit of the provision contained in Section 301(b) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 226, making it mandatory that a credit of 80% be allowed against the inheritance tax due the federal government for inheritance, estate, and succession taxes paid the states with respect to property included in the gross estate, adopted its Act No. 119 providing: "Whenever the aggregate amount of all inheritance, succession, legacy and estate taxes actually paid to the several states of the United States in respect to any property owned by such decedent shall be less than eighty per cent (80%) of the estate tax payable to the United States under the provisions of the said Federal Revenue Act of 1926, but not otherwise, the difference between said amount and said eighty per cent (80%) shall be paid to the State of Louisiana."

Under the express provisions of Act No. 127 of the Extra Session of 1921, as amended by Act No. 44 of 1922, the heirs or legatees of a deceased person are required to have the inheritance tax fixed within six months after the death of the party in whose estate they are benefiting, a fee equivalent to 1% per month being charged if such payment is made after the six months period, increased to 2% per month after 12 months. They cannot be placed in possession of the property so inherited until such tax has been paid.

Now, because of the Congressional adoption of Section 402(b) (2) of the Revenue Act, amending Section 811(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. Int. Rev.Code § 811(e), the tax collector of Caddo parish is contending inheritance and estate taxes in this state, under Act No. 119 of 1932, must be computed on the basis established in that section, that is, that the value of the gross estate of the decedent to be taxed must be determined by including therein "the value at the time of his death of all property," such gross estate where community interests are involved consisting of "the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State * * * except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. In no case shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the

decedent's power of testamentary disposition." Section 402(b) (2) of the Revenue Act of 1942; 26 U.S.C.A. Int.Rev.Code § 811(e) (2).

Under the express provisions of the Louisiana Revised Civil Code, "Every marriage contracted in this State, superinduces of right partnership or community of acquets or gains" (Article 2399), and *"This partnership* or community *consists* of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, *of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage,* either by donations made jointly to them both, or by purchase, or in any other similar way, *even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase."* Article 2402. (Italics ours.)

■■ That this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired, is well settled in this state (Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am.Dec. 478; Theall v. Theall, 7 La. 226, 26 Am.Dec. 501; Succession of Marsal, 118 La. 212, 42 So. 778; Succession of May, 120 La. 692, 45 So. 551; Beck v. Natalie Oil Co., 143 La. 153, 154, 78 So. 430; Ramsey v. Beck, 151 La. 190, 91 So. 674; Phillips v. Phillips, 160 La. 813, 107 So. 584; Pfaff v. Bender, D.C., 38 F.2d 642; and Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252) and the federal government, in levying inheritance or estate taxes, has consistently recognized that the law of the state is determinative of the interest left by the decedent. Liebman v. Fontenot, D.C., 275 F. 688; Warburton v. White, 176 U.S. 484, 20 S.Ct. 404, 44 L.Ed. 555; Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040; and 32 Op.Atty.Gen. 435.

■ It is our opinion, therefore, that the construction sought to be placed on Act No. 119 of 1932 by the tax collector—that is, that in arriving at the amount of inheritance taxes due by the plaintiffs in this rule on the property bequeathed to them by their father, there must be included in his gross estate not only the half interest in the community owned by him and willed to them, but also the half of the community belonging to their mother, who survives—would render it violative of the due process guaranteed by the 14th amendment to the Constitution of the United States, since such interpretation would result in the imposition of a tax upon those succeeding to the estate of a decedent measured in part by the property comprising the estate of another, to which the estate of the decedent is in no way related.

■ In the case of Hoeper v. Tax Commission, 284 U.S. 206, 52 S.Ct. 120, 122, 76 L.Ed. 248, 78 A.L.R. 346, the Supreme Court of the United States, in reversing a decision of the highest court in Wisconsin maintaining the validity of a statute of that state requiring the husband and wife to file joint income tax returns and levying a tax on a graduated scale on the combined total of the two incomes, pointed out that the question presented was whether

a state has the power to measure the income tax owned by the husband on an income that was, in part, that of his wife, and concluded that *"because of the fundamental conceptions which underlie our system, any attempt by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law as guaranteed by the Fourteenth Amendment. That which is not in fact the taxpayer's income cannot be made such by calling it income."* See, also, Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969. (Italics ours.)

The limitation placed upon the states by the 14th amendment is likewise placed on the federal government under the 5th amendment.

In the case of Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 714, 71 L.Ed. 1184, 52 A.L.R. 1081, the Supreme Court of the United States expressly recognized that the congressional power to levy an inheritance tax is subject to the restriction and limitation found in the 5th amendment, holding that so much of Section 402(c) of the Revenue Act of 1919 requiring the value of property donated by a decedent prior to the passage of such act should be included in computing the gross estate on which the inheritance or estate tax was to be levied, amounted to a taking of property without due process of law, in violation of the 5th amendment, saying:

"This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. Brushaber

v. Union Pac. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann. Cas.1917B, 713; Barclay & Co. v. Edwards, 267 U.S. 442, 45 S.Ct. 135, 348, 69 L.Ed. 703. See, also, Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969. And we must conclude that section 402(c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation."

This section of the Revenue Act of 1919, 402(c) 40 Stat. 1097, was amended in 1926 § 302(c) 26 U.S.C.A. Int.Rev.Acts, page 227, to provide that transfers of property made within two years prior to the death of a person should be calculated in computing his estate for the purpose of levying an inheritance tax thereon, as having been made in contemplation of death, and the Supreme Court, again passing on the constitutionality of the statute, answering affirmatively the question certified to it by the Circuit Court of Appeals for the Third Circuit 48 F.2d 1058, of whether or not the sentence in this section reading: "Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at

the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title," constituted a violation of the due process clause of the 5th Amendment to the Constitution of the United States, had this to say:

"In substance and effect, the situation presented in the Hoeper case is the same as that presented here. In the first place, *the tax, in part, is laid in respect of property shown not to have been transferred in contemplation of death and the complete title to which had passed to the donee during the lifetime of the donor;* and, secondly, the tax is not laid upon the transfer of the gift or in respect of its value. It is laid upon the transfer, and calculated upon the value, of the estate of the decedent, such value being enhanced by the fictitious inclusion of the gift, and the estate made liable for a tax computed upon that value. * * * *The result is that upon those who succeed to the decedent's estate there is imposed the burden of a tax, measured in part by property which comprises no portion of the estate, to which the estate is in no way related, and from which the estate derives no benefit of any description.* Plainly, this is to measure the tax on A's property by imputing to it in part the value of the property of B, a result which both the Schlesinger [Schlesinger v. State of Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557, 43 A.L.R. 1224] and Hoeper cases condemn as arbitrary and a denial of due process of

law. *Such an exaction is not taxation but spoliation.* 'It is not taxation that government should take from one the profits and gains of another. That is taxation which compels one to pay for the support of the government from his own gains and of his own property.' United States v. Baltimore & O. R. Co., 17 Wall. 322, 326, 21 L.Ed. 597 [599]." Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 361, 76 L.Ed. 772. (Italics ours.)

It is obvious, therefore, that the interpretation sought here with respect to Section 402(b) (2) of the Revenue Act of 1942 is to the same effect as that sought with reference to Act No. 119 of 1932, that is, the inclusion of his wife's property in the taxable estate of the decedent Wiener, in violation of the 5th Amendment to the Constitution of the United States.

The conclusion we have reached in this case is in keeping with the decision of the United States Supreme Court in the case of Bender v. Pfaff, supra, where that court recognized that under the law of Louisiana the wife is not only vested with the ownership of half of the community property from the moment it is acquired, but is likewise the owner of half of the community income. It necessarily follows that the wife's share of this income was utilized in acquiring the property found in the community estate that existed between her and her deceased husband.

In fact, counsel for the tax collector concede in their brief that if the Pfaff case "stood alone in the jurisprudence, undoubtedly the position of the succession

here would be correct, but there are other cases pointing to a contrary result in so far as the Federal Estate law is concerned," citing the cases of Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758, and United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed 763.

A study and analysis of these two cases, in our opinion, conclusively demonstrates that they are neither controlling of the issue presented in this case, nor apposite.

In the Tyler case, the Commissioner of Internal Revenue included in Tyler's gross estate certain property held by him and his wife under a tenancy by the entirety in Maryland and Pennsylvania, that is, (1) corporate shares that, at the time of the conveyance creating the tenancy by the entirety with respect thereto, were owned solely by the decedent; (2) ground rent and real estate purchased with the separate funds of the husband though conveyed to both of them as tenants by the entirety; and (3) real estate owned by the decedent at the time it was conveyed to a third person and reconveyed to the decedent and his wife as tenants by the entirety. The question was whether or not the inclusion of this property in the gross estate of the decedent for the purpose of computing the tax upon the transfer of the net estate under Section 202(c) of the Revenue Acts of 1916, 39 Stat. 778, and section 402(c) of 1921, 42 Stat. 278, contravened the 5th Amendment to the Constitution of the United States. The court found that none of the property constituting the tenancy thus created had, prior thereto, ever belonged to the surviving spouse, and that although, under the

law of Maryland and Pennsylvania, no interest in the property held by tenants by the entirety passed to the surviving spouse upon the death of one of them, the whole continuing in the survivor, such law was based upon the amiable fiction of the common law that the husband and wife are but one person—constitute one unit—and that the wife, while entitled to the joint use and possession of the property during the lifetime of her husband, was without right to dispose of any part thereof by will or pass it to her legal heirs, concluding that [281 U.S. 497, 50 S.Ct. 359, 74 L.Ed. 991, 69 A.L.R. 758]: *"These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax,"* and pointing out that "The evident and legitimate aim of Congress was to prevent an avoidance, in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds had been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part, entirely appropriate as a means to that end." (Italics ours.)

In the Jacobs case, which arose in Illinois, the payment of an estate tax was sought to be evaded by the creation of a joint tenancy, a fiction similar to that of the tenancy by the entirety in the Tyler case, and the question was whether or not

"the entire value or only one-half the value of real property—purchased by a decedent with his own funds and held at his death by his wife and himself under a joint tenancy set up prior to 1916—may be included in the decedent's gross estate under the 1924 Revenue Act." [306 U.S. 363, 59 S.Ct. 552, 83 L.Ed. 763.] There the court, relying on the decision in the Tyler case, concluded that "A tenancy by the entirety 'is essentially a *joint tenancy,* modified by the common law theory.that husband and wife are one person,'" and that, as in a tenancy by the entirety, the wife could not dispose of her interest therein by will or pass it to her legal heirs at her death. The court specifically pointed out that the decedent paid the entire purchase price for the property held in the *joint tenancy* with his separate funds and that it was clearly the intention of Congress "to include in the gross estate of a decedent the full value at death of all property owned by him and any other in joint tenancy or by the entirety * * * insofar as the property or consideration therefor is traceable to the decedent." (Italics ours.)

Thus it may be seen that the pivotal points upon which the decisions in these two cases turned were that the wife contributed nothing, either in money or property, toward the creation of the joint tenancy or the tenancy by the entirety, and that she was powerless to dispose of any interest in such estate by will or through legal heirship.

 In Louisiana, the situation is entirely different, for here the civil law prevails, and the theory of the civil law is that the acquisition of all property during the marriage is due to the joint or common efforts, labor, industry, economy, and sacrifices of the husband and wife; in her station the wife is just as much an agency in acquiring this property as is her husband. In Louisiana, therefore, the wife's rights in and to the community property do not rest upon the mere gratuity of her husband; they are just as great as his and are entitled to equal dignity. Unlike the wife's interest in the common law states, where joint tenancies and tenancies by the entirety abide, the wife's interest in the community property in Louisiana is more than a mere expectancy or hope and her husband's death is not the force that generates her title thereto and her rights therein. Over a hundred years ago, in the case of Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am. Dec. 478, this court held that the rights of the wife, as well as those of the husband, in and to the marital gains, grow out of the marriage contract itself and do not originate only when it is dissolved, and this is now our settled law, as was pointed out in the case of Phillips v. Phillips, 160 La. 813, 107 So. 584. She is the half-partner and owner of all acquisitions made during the existence of the community, *whether they be property or income.* She has the same privilege as her husband of disposing of her interest therein by will, and, in the absence of a will, at her death her interest in the community property passes to her legal heirs in the same manner as her husband's interest therein passes to his legal heirs in the absence of a will.

It is true that in weaving this harmonious commercial partnership around the intimate and sacred marital relationship, the framers of our law and its codifiers saw fit, in their wisdom, to place the husband at the head of the partnership, but this did not in any way affect the status of the property or the wife's ownership of her half thereof. As expressed in Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 60, 75 L.Ed. 239, "The law's investiture of the husband with broad powers, by no means negatives the wife's present interest as a co-owner." The community partnership had to be placed in charge of a managing partner for very expeditious and necessary reasons—dealings with third parties with respect to the community property had to be protected from the nullifying actions of the other spouse; the confusion ensuing from dual control had to be avoided. And the husband was made the managing partner of the community and charged with the administration of its effects, as well as with the alienation of its effects and revenues by onerous title, because he was deemed the best qualified to act.

But the redactors of our law did not neglect to hedge the wife's interest in the community property with protecting rights. They subjected the husband's powers to various substantial checks and limitations corresponding to those imposed upon any managing partner or agent and provided for the wife's right to assert such limitations. He is, by statute, expressly prohibited from donating the community real estate or the whole or a portion of the

movables, and he may not dispose of the community income in any manner by fraud to injure the wife. No portion of the community income can be used to improve his separate estate or to pay his separate debts. The wife may, without obtaining a divorce, and even in the absence of fraud, sue for a dissolution and liquidation of the community partnership and secure the delivery into her own exclusive management and control of her half of the community property whenever her husband proves to be incompetent, a bad manager, of a reckless or speculative disposition, or whenever his affairs are in such disorder that her property rights are jeopardized. Upon the institution of such a suit, she may, by injunction, restrain her husband from disposing of any portion of the community property and she may likewise enjoin his disposition of any part of the community partnership property when, even though he is a good business manager, she provokes a dissolution and liquidation of the community through divorce proceedings because he is otherwise an unfaithful partner. In the event of a divorce, the wife is entitled absolutely and of right to an exact one-half of the community property and the court has no discretion or power to award her less. This is true even though the husband himself provokes the divorce because the wife has been guilty of the very serious misconduct of adultery. The wife's right to dispose of her interest in the community property by will is absolutely unrestricted, and even though she wills it to her paramour, her husband has no right to complain. If the wife does not make a will, her children take her share

of the community property to the exclusion of the husband; and this is so even though the children are the wife's illegitimate children by another man. In the event the wife dies leaving neither a father nor mother nor decedents, the husband, under the express provisions of Article 915 of the Revised Civil Code, inherits her share of the community property, provided there is no will, and in such case the state of Louisiana, as well as the United States, assesses an estate tax on the property so inherited. The same is true when the wife wills her half of the community to her husband.

It is obvious, therefore, that the wife's interest in the community property in Louisiana does not spring from any fiction of the law or from any gift or act of generosity on the part of her husband but, instead, from an express legal contract of partnership entered into at the time of the marriage. There is no substantial difference between her interest therein and the interest of an ordinary member of a limited or ordinary partnership, the control and management of whose affairs has, by agreement, been entrusted to a managing partner. The only real difference is that the limitations placed on the managing partner in the community partnership are fixed by law, while those placed on the managing partner in an ordinary or limited partnership are fixed by convention or contract. And yet, we are asked to place an interpretation on Act No. 119 of 1932 and Section 402(b) (2) of the Revenue Act of 1942 that would result in the inclusion in the estate of the managing partner of an interest in the community

partnership to which he never had any claim and which was, in fact, during his lifetime and is now, owned by his wife.

 It is our conclusion, therefore, that the trial judge, in fixing the estate taxes due by the plaintiffs in the rule on the property willed to them by their late father, Sam Wiener, Jr., properly excluded from the mass of the estate their mother's half of the community property.

For the reasons assigned, the judgment of the lower court is affirmed.

ROGERS, J., absent.