**Mrs. Charles C. HUNDEMER**

v.

**UNITED STATES of America and District Director of Internal Revenue.**

**Civ. A. No. 67–10.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 12, 1968.

Thomas H. Benton, Benton & Moseley, Baton Rouge, La., for plaintiff.

Peter Winstead, Tax Div., U. S. Dept. of Justice, Fort Worth, Tex., Louis C. LaCour, U. S. Atty., Eastern Dist. of Louisiana, Gene S. Palmisano, First Asst. U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., for defendants.

WEST, Chief Judge:

This case involves the very narrow question of whether or not a husband, living under a community property regime in Louisiana, may convert his separate cash property into community property by actual delivery of it to a community checking account with the intent to so change its character. This Court answers the question in the affirmative.

There are no important disputed facts in this case. Plaintiff is the widow of Charles C. Hundemer, deceased, who died intestate on January 6, 1963. Prior to his death, Mr. Hundemer inherited certain monies from his sister, Caroline Hundemer, who preceded him in death. The monies so received from his sister's succession were deposited by Charles Hundemer in community accounts with the express intention of converting the funds from separate property to community property. On February 5, 1962, the first deposit in the sum of $6,580.64 was made to a newly established joint account with the Baton Rouge Savings and Loan Association. This was an account controlled jointly by plaintiff and her husband, Charles Hundemer, now deceased. Thereafter additional deposits of admittedly community funds were made to this account which brought its balance to $10,000. On October 10, 1962 a deposit of money in the sum of $17,000 received by Charles Hundemer from the succession of his sister was deposited in an existing joint checking account in the Fidelity National Bank of Baton Rouge, and on January 4, 1963, a third deposit in the sum of $25,000, which was also received by Charles Hundemer from the succession of his sister, was made to the same joint checking account in the Fidelity National Bank. Between the time of the initial deposit of inherited funds to the checking account on December 10, 1962 and the time of the very sudden and unexpected death of Charles Hundemer on January 6, 1963, additional deposits in the total sum of $692.70 of admittedly community funds were deposited to the account, and some forty-one checks, totaling $6,477.24, were written on the account. Both the savings and loan account and the checking account were controlled jointly by Mr. and Mrs. Hundemer.

When the succession of Charles C. Hundemer was opened in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana, on April 5, 1963, the inherited funds referred to, which had been deposited in the joint community accounts by Mr. Hundemer, with the express intention of converting them to community funds, were adjudged, in a non-adversary action, ex-

cept for the appearance of the Attorney for the State of Louisiana Tax Collector, to be community funds. Thereafter, when plaintiff filed her Federal Estate Tax Return, the District Director concluded that these funds were the separate property of the decedent, and he thereupon assessed additional taxes against the plaintiff in the sum of $6,103.62, plus interest of $930.56, or a total of $7,034.18. This assessment was paid under protest by plaintiff on October 14, 1966, and a timely claim for refund was made and disallowed by the District Director on November 22, 1966. This suit followed.

There is no contention made in this case that the alleged gifts or transfers of decedent's separate funds to the community accounts were made in contemplation of death, nor is there any question of commingling of funds involved. It is admitted by both parties that the funds involved were the separate property of Charles C. Hundemer when he received them from the succession of his sister. It is admitted and agreed that he deposited these funds in joint accounts which both he and the plaintiff considered to be community accounts, and it is admitted that the funds were so deposited by Charles Hundemer with the specific intent on both his part and on the part of his wife that the property would thereafter be considered to be community property.

The only question, therefore, to be decided is whether or not, under these circumstances, this cash, which was admittedly the separate property of Mr. Hundemer when originally received by him from the succession of his sister was thus converted into community property when he deposited it in joint, community accounts, from which both he and his wife could withdraw funds at will. We think that it was. Under these circumstances, in order for the funds to have been converted from separate to community funds, one of two things would be necessary. Either the funds so deposited must have been so commingled with existing community funds as to extinguish their identity as separate property, or they must have been the subject of a valid gift or donation. There is no question under the facts of this case that no such commingling of funds took place. The funds deposited by Mr. Hundemer were, at the time of his sudden death two days after the last deposit was made, clearly identifiable. No serious claim of commingling has been made, and even if it had been, it could not have been sustained.

So the only remaining question to be answered is whether or not the deposit of the funds into the joint account with the intention of converting them to community funds constituted a valid gift or donation of separate property to the community under Louisiana law.

There is no impediment under Louisiana law to one of the married couple giving to the other, either by marriage contract or during marriage, all that he or she might give to a stranger. LSA–C.C. art. 1746. But we are not confronted with a claim that Mr. Hundemer attempted to make a gift of his separate funds to his wife as was the contention in the Succession of Grubbs, La. App., 170 So.2d 256, discussed later herein. The claim here is that Mr. Hundemer gave or donated the funds to the community of acquets and gains existing between him and his wife. According to Article 2807 of the Louisiana Revised Civil Code:

> "The community of property, created by marriage is not a partnership; it is the effect of a contract governed by rules prescribed for that purpose in this Code."

If this were actually the case it might be difficult to see how a donation could in any manner be made to the community as an entity. But according to the pronouncements of the Supreme Court of Louisiana, by whose decisions this Court is bound, Liebman v. Fontenot, 275 F. 688 (W.D.La.1921); Warburton v. White, 176 U.S. 484, 20 S.Ct. 404, 44 L. Ed. 555; Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A., N.S., 1040, the community has indeed

been held to be a partnership. In the Succession of Wiener, 203 La. 649, 14 So. 2d 475, the Louisiana Supreme Court said:

> "That this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired, is well settled in this state. (Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am.Dec. 478; Theall v. Theall, 7 La. 226, 26 Am.Dec. 501; Succession of Marsal, 118 La. 212, 42 So. 778; Succession of May, 120 La. 692, 45 So. 551; Beck v. Natalie Oil Co., 143 La. 153, 154, 78 So. 430 * * * Pfaff v. Bender, D.C., 38 F.2d 642; and Bender v. Pfaff, 282 U.S. 127, 51 S. Ct. 64, 75 L.Ed. 252) * * *"

As a partnership, the community is certainly capable of receiving gifts or donations; thus the law of Louisiana regarding gifts or donations inter vivos becomes important. Article 1468 of the Louisiana Revised Civil Code provides:

> "A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it."

Article 1536 provides:

> "An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights, or actions, under the penalty of nullity."

Article 1538 says:

> "A donation inter vivos, even of movable effects, will not be valid, unless an act be passed of the same, as it is before prescribed.
>
> "Such an act ought to contain a detailed estimate of the effects given."

And Article 1539 provides:

> "*The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.*" (Emphasis added.)

While the Court has been unable to find any Louisiana case directly in point, the holding in Succession of Grubbs, supra, seems to be dispositive of the issues here presented. In that case, Mr. Grubbs, prior to his death, went to the Pioneer Bank and Trust Company in Shreveport, Louisiana, and deposited the sum of $10,000 in a savings account in the name of his second wife, Virginia S. Grubbs, with whom he was living. While the reported case does not specifically so state, it is assumed that these funds were his separate property, acquired during his preceding marriage. When the funds were so deposited, written authorization was given to the bank for withdrawals from the account to be made upon the signature of either Mr. or Mrs. Grubbs. Upon the death of Mr. Grubbs, it was contended by Mrs. Grubbs that these funds were her separate property by virtue of a gift or donation made to her by her husband. It was her contention that when Mr. Grubbs deposited the funds in an account in her name this amounted to a manual gift to her under Article 1539, supra, requiring no further formality. But the Court found that since Mr. Grubbs did not, as required by Article 1468, supra, divest himself "at present and irrevocably of the thing given" because of the fact that he retained the right to withdraw the funds at will, and since the depositing of the funds to what was in effect a joint checking account did not constitute a manual gift (real delivery) of the funds *to Mrs. Grubbs,* as contemplated by Article 1539, supra, there was no valid gift of the funds *to Mrs. Grubbs.* Hence the funds could not be considered her separate property. But then the Court went on to hold, not that the funds remained the separate property of Mr. Grubbs, but that they became *property belonging to the community.* While no specific reason was given by the Court for holding the funds to be community property, that conclusion could only be reached by deciding that the husband could, and indeed did, make a manual gift under Article 1539, supra, *to the community* when

he physically delivered the funds into what amounted to a community or joint savings account. While no specific intent was indicated on the part of Mr. Grubbs to convert the funds to community property, the Court apparently considered the actual delivery of the funds into a community account to be sufficient evidence of his intent.

In the present case, we have not only actual delivery of the funds to community accounts, but admitted specific intent to convert the funds to community property. The only element of this case that gives us pause is the fact that by delivery of the funds to the community accounts, Mr. Hundemer did not, in fact, divest himself, "at present and irrevocably," of the thing given, as would seem to be required by Article 1468, supra. But to say that this is a necessary requirement in order for a husband to make a gift to the community would be tantamount to saying that a husband cannot, under any circumstances, make a gift of his separate property to the community whether by notarial act as provided for in Article 1536, supra, or by manual delivery as provided for in Article 1539, supra. This would have to follow because of the fact that under Louisiana law the husband is at all times the head and master of the community and as such necessarily acts as the administrator of the community property. Article 2404 of the Louisiana Revised Civil Code provides in part as follows:

"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife."

Thus, were we to hold that simply because the husband has not irrevocably divested himself of all control over the thing given to the community he has not made a valid gift to the community, we would necessarily have to hold that he could not, under any circumstances, make a valid gift of his separate property to the community, because by operation of law the husband is charged with the duty of administering the community estate. We do not believe that the law of Louisiana contemplates such a result. Certainly the law would not prohibit Mr. Hundemer from doing intentionally that which he could, under different circumstances, be held to have done by accident. For example, had Mr. Hundemer purchased real property with his separate funds and failed to include in the act of sale the double barrelled declaration that the property was purchased with his separate funds, for his separate estate, the property so purchased would then be conclusively presumed to be community property. Slaton v. King, 214 La. 89, 36 So.2d 648 (1948); Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582 (1953); Beatty v. Vining, 147 So.2d 37 (La.App. 1962); Succession of Sonnier, 208 So. 2d 562 (La.App.1968). Also, had Mr. Hundemer deposited his funds to a community checking account and inadvertently allowed his funds to become so commingled with the community funds as to be unidentifiable, his funds would then be held to have become community funds. Slater v. Culpepper, 233 La. 1071, 99 So. 2d 348 (1957); Graves v. United States Rubber Company, 237 La. 505, 111 So.2d 752 (1959); Bordelon v. Bordelon, 177 So.2d 137 (La.App.1965); Succession of Sonnier, 208 So.2d 562 (La.App.1968). Surely if his separate property could thus by accident be converted to community property, it could be so converted intentionally and by design.

We believe that when actual delivery of separate corporeal movable effects is made by the husband to the community estate, with the intent to convert the property so delivered from separate to community property, a valid manual gift has been made as contemplated by Louisiana Revised Civil Code Article 1539. While the husband, in such a case, has not completely divested himself of all control over the thing given as would seem to be contemplated by Article 1468, he has, nevertheless, retained only that control which the law requires him to retain. From the moment the funds are

delivered to the community account, the wife in community immediately acquires a vested interest in and to her equal share. Succession of Wiener, supra.

In this case, no gift to Mrs. Hundemer was contemplated or attempted. The gift was purely and simply a gift to the community—to the partnership in which the husband and wife owned equal shares. The intent was present; the thing given was a corporeal movable; and real, actual delivery took place. No other formality was required. LSA–R.C.C. 1539. When this delivery actually took place, with the express intent on the part of the donor to make a gift of his separate property to the community of acquets and gains existing between him and his wife, the property so given to and received by the community became irrevocably a part of the community of acquets and gains existing between Mr. and Mrs. Hundemer.

For these reasons it is concluded that the funds involved were indeed community funds at the time of Mr. Hundemer's death, and consequently plaintiff is entitled to recover the taxes improperly collected and paid under protest, together with interest and costs as allowed by law. Judgment will be entered accordingly.