232 So.2d 92 (1970)
Alice Faye Bumbard LAFFITTE, Plaintiff-Appellant,
v.
James LAFFITTE, Defendant-Appellee.
No. 11345.
Court of Appeal of Louisiana, Second Circuit.
February 3, 1970.
Rehearing Denied March 16, 1970.
*93 Love, Rigby, Donovan, Dehan & Love, by Robert J. Donovan, Jr., Shreveport, for plaintiff-appellant.
W. Charles Brown, Mansfield, for defendant-appellee.
Before AYRES, DIXON and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff, Alice Faye Bumbard Laffitte, filed this suit against defendant James Laffitte seeking a partition of the assets formerly comprising the community of acquets and gains existing between them prior to November 7, 1968 when defendant in reconvention obtained an absolute divorce. Plaintiff and defendant reached an amicable partition agreement of all the community assets except one, plaintiff alleging that the Employees Profit Sharing Plan established by Hendrix Manufacturing Company, Inc., in which defendant as an employee of the company, was a participant, was part of the community assets. The judgment of the trial court rejected plaintiff's demands and recognized defendant as the owner of all rights to the funds credited to his account in the Employees Profit Sharing Plan and declared that said asset was the separate property of defendant. From this adverse judgment plaintiff has appealed.
Defendant began his employment with Hendrix Manufacturing Company, Inc. in 1948 before his marriage to plaintiff on December 22, 1951. Defendant's employer established an Employees' Profit-Sharing Plan on December 31, 1956. The evidence shows that defendant had to his credit in his account under the plan the sum of $7,905.71 as of November 7, 1968 the date the community of acquets and gains was terminated.
In order to determine whether these credits or rights constitute a community asset a study of their origin and purpose is necessary. The booklet containing the text of the Hendrix Manufacturing Company's Employees' Profit-Sharing Trust Plan is in the record.
On November 6, 1956 an agreement was executed between Hendrix Manufacturing Company, a Louisiana corporation, having its principal office at Mansfield, Louisiana, hereinafter referred to as "Employer", and Republic National Bank of Dallas, Texas, herein referred to as "Trustee". In this agreement the employer declared that it "* * * desires to recognize the contribution made to the successful operation of its business by its employees and to reward such contribution by establishing a profit sharing plan for those employees who shall qualify hereunder and for their beneficiaries; * * *."
The employer stated its intention to establish a profit sharing plan and trust which would qualify under the Internal Revenue Code. The trust was organized under the laws of the state of Texas and provided that all provisions of the Texas Trust Act, and any amendments thereto, not inconsistent with the enumerated powers or other provisions of the agreement shall be applicable to the administration of the trust. The employer reserved the right to amend or terminate the plan under certain conditions set out in the agreement. Any such termination would be retroactive. The trust conforms with the applicable provisions of the Federal Internal Revenue Code of 1954 particularly the requirements of Section 401(a) of the Code and became effective on December 31, 1956.
The employer desired to establish by such agreement and trust an employees' profit sharing plan to provide certain future benefits to its present and future fulltime employees who remained or would remain with the employer during a great portion of their productive years. The agreement sets forth conditions whereby the employees then qualifying and others qualifying in the future would participate under the plan by reason of eligibility and length of service with the company. Such eligible employees would be assured of an income *94 or sum of money after their retirement with the amount depending directly upon the profits of the company and the length of continuous service of the employee. The trust fund consisted entirely of contributions by the employer. According to the agreement the title of such fund was vested in the Trustee under the terms of the plan and no employee or his beneficiary had any vested right, title or interest in what might be termed an "individual account." Nor could an employee or his beneficiary make any assignment of the account to his credit. The account was not subject to claims of the employee's creditors, and such benefits were for the exclusive use of those designated.[1] Only at the termination of employee's employment with employer would he or his beneficiary, as the case might be, have a vested interest. However, the employer's records reflect that the rights of the employee are treated as a "vested interest" as shown on the statement attached to plaintiff's Exhibit 2. This interest would be regulated by the terms of the agreement or plan.
Defendant had been in the employ of Hendrix Manufacturing for more than 20 years. If his employment had been terminated on November 7, 1968 he would have been entitled to 100% of the funds credited to his account. He would forfeit this right only if his employment was terminated by the employer for dishonesty or for conviction of a crime as defined by the laws of any state or federal body. The employee was not a party to the agreement although his rights thereunder were enumerated under the rights of a "participant". The only privilege given an employee under the plan was to designate a beneficiary to receive the benefits pursuant to the articles of the plan in the event of the death of such employee or "participant". LSA-C.C. art. 2334 defines common property and provides as follows:
"The property of married persons is divided into separate and common property.
"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
* * * * * *
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. * * *"
Even though the employer contributed all the funds in the profit sharing trust plan, the contribution is, in a sense, a self-serving act. In return for the voluntary advance of the funds, the employer hoped to receive certain benefits, although these were intangible and difficult to evaluate. According to the booklet published by Hendrix Manufacturing Company, Inc. to explain the profit sharing trust plan to its employees, two of the main objectives of the plan are: (1) To show the company's desire to protect the future welfare of their employees and to show the company's sense of responsibility towards them. (2) To insure the continued success of the company by assuring loyal and efficient efforts of each of its employees and to reward them accordingly.
The amount contributed to the profit sharing plan by employer was to be determined from the profits made, providing a direct incentive to every eligible employee to contribute to the efficient operation of the company. The existence of such a profit sharing plan would be an inducement to one to seek employment with the company and to conscientiously carry out his work load. This in turn would encourage one to remain in the company's employment so that he would eventually receive the plan's benefits. Therefore the establishment and maintenance of the profit sharing trust plan by the employer was not a purely gratuitous act, but was in the nature of additional remuneration to the employee who met the conditions of the plan. The employer expected and received something in return for what it gave.
*95 The funds placed in the profit sharing trust plan were for defendant's credit and therefore constituted a form of remuneration or deferred compensation. Once these funds were credited to the defendant's account the employer could not revoke this credit or retrieve such funds. It was possible the employee could forfeit the rights to the funds but this was not done in this case. Defendant had as of November 7, 1968 complied with all the conditions of his employment to have the right to receive 100% of the funds credited to his account in the plan simply by retiring.
The defendant contends this right and the assets thereby represented had no value as a tangible asset on November 7, 1968, the date of the dissolution of the community and there are no property rights acquired by defendant in said funds and that it should not be inventoried as an asset of the community and ultimately be subject to partition between defendant and plaintiff.[2]
Under the definitions of our Louisiana Civil Code we are of the opinion that the "vested interest" of plaintiff as a participant in the employee profit sharing trust plan is an incorporeal, movable thing and that this incorporeal, movable thing is property as defined by our law. This property was acquired by the husband during his marriage to the plaintiff-wife and therefore constituted an asset of the community.
The Supreme Court of Louisiana in the case of Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956) stated:
"* * * it is stamped as property because it includes contract rights and obligations to receive money or other benefits to become due in the future, even though contingent upon the happening of an event at an uncertain time. * * *" [86 So.2d 169, 174]
In this case defendant has the sole control of the event, the voluntary termination of his employment, that may now cause the payment of 100% of the sum credited to his account.
In the Succession of Wiener, 203 La. 649, 14 So.2d 475 (1943) the court emphasizes the rights of the wife as the community partner when it said:
"In Louisiana, the situation is entirely different, for here the civil law prevails, and the theory of the civil law is that the acquisition of all property during the marriage is due to the joint or common efforts, labor, industry, economy, and sacrifices of the husband and wife; in her station the wife is just as much an agency in acquiring this property as is her husband. In Louisiana, therefore, the wife's rights in and to the community property do not rest upon the mere gratuity of her husband; they are just as great as his and are entitled to equal dignity. * * * She is the half-partner and owner of all acquisitions made during the existence of the community, whether they be property or income. * *
* * * * * *
"* * * In the event of a divorce, the wife is entitled absolutely and of right to an exact one-half of the community property and the court has no discretion or power to award her less. This is true even though the husband himself provokes the divorce because the wife has been guilty of the very serious misconduct of adultery. * * *" [14 So.2d 475, 480, 481]
The Louisiana law recognizes that in the conjugal partnership which revolves around the intimate and sacred marital relationship the wife's interest must be protected even though the husband is the administrator and head thereof. The employer must consider that the production of its employees will be affected by the welfare and happiness of the employees, and the part a wife plays in bringing this about. The rights earned under the profit sharing plan of Hendrix Manufacturing Company, Inc. by *96 the employee while married are as of the date of the dissolution of said marriage owned in indivision by plaintiff Alice Faye Bumbard Laffitte and defendant, James Laffitte, and the defendant is accountable to the plaintiff for her one-half undivided share thereof.
The judgment appealed from is reversed and set aside, and for the reasons assigned Alice Faye Bumbard Laffitte is granted judgment herein declaring her to be owner of a one-half undivided share of the account credited to James Laffitte in the employees profit sharing plan of the Hendrix Manufacturing Company, Inc. as of November 7, 1968 and which totaled as of that date $7,905.51.
Judgment reversed and rendered.
NOTES
[1] Art. XVII Sec. 17-2 (Exhibit D-1)
[2] LSA-C.C. Arts. 460, 470, 475, 870.