LEMMON, Judge
(dissenting).
I disagree with the majority as to both of plaintiff’s demands for relief.

Supplemental Compensation Plan

The Supplemental Compensation Plan was not a gratuity, as McDermott contends, but rather was a contract from which the employee expected to receive stipulated monetary benefits, while the employer expected to receive the benefits derived from having more loyal and diligent employees, principally an increase in productivity and a reduction in labor turnover. Laffitte v. Laffitte, 232 So.2d 92 (La.App.)
I view this particular contract as follows : McDermott extended an offer, on an annual basis, to each of certain employees that if the company income in that year exceeded an amount calculated with reference to the amount of capital investment, McDermott agreed to place supplemental compensation for each of these employees in a reserve fund, from which part of the supplemental compensation was payable immediately and part was payable on the condition that the employee remain in company service for prescribed additional periods. The employees, although they made no promise and were not obliged to work for that year or for any specified period of time, accepted McDermott’s unilateral offer by completing performance of services during that entire year in an effort to increase company income for the year. McDermott’s resulting contractual obligation to pay supplemental compensation was supported by the same consideration given for its promise to pay wages.
Thus, when the employees’ services were fully rendered, McDermott became contractually obligated to make both immediate and installment payments as compensation for past performance, the obligation to make the installment payments being conditioned upon continued employment.[1]
The condition was one imposed on the employee by the employer.[2] If the employee fulfilled the condition, the employer was obligated to pay the installment payments; conversely, if the employee failed to fulfill the condition, the employer’s obligation was discharged.
Under such circumstances an obligor whose obligation is contingent upon fulfillment of a specified condition cannot defeat that obligation by preventing accomplishment of the condition.
George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954).
*415 Because of plaintiff’s past performance, McDermott was obligated to pay installments to plaintiff each year until the total awards were paid. The only condition to McDermott’s obligation was that plaintiff remain in McDermott’s employment. Plaintiff was ready and willing to do so, but McDermott (the party bound to perform the obligation) prevented plaintiff from fulfilling the condition. Under these circumstances the condition is considered as fulfilled. C.C. art. 2040. Stated otherwise, the forfeiture provision of the plan, although clear and unambiguous in its language, is unenforceable under the circumstances of this case, where forfeiture resulted from nonperformance of a condition which the faultless plaintiff was deprived of any opportunity to perform.[3]
In my opinion plaintiff is entitled to the unpaid portions of the total awards which McDermott had obligated itself to pay.

Retirement Plan

The typical retirement plan provides that the employee becomes eligible for membership after a stated period of time in the employer’s service (three years in this case). When the employee enters the plan, the employer begins making contributions into a fund on behalf of that particular employee in an amount determined by the employee’s salary, age, length of service and other factors. In some plans (not this one) the employee also makes contributions on a predetermined basis, and the employee’s contributions normally are recoverable whenever he terminates employment. However, the employer’s contributions and the benefits of the program are not payable until vesting occurs, at which time certain rights of the employee become nonforfeitable. In many plans vesting occurs in stages, with a larger percentage of the benefits vesting as length of service increases.
The United States Congress recently studied the problem presented when employees’ jobs are terminated after many years of service and the employees are denied benefits that have been placed for them in a fund for retirement purposes. Recognizing that the employer’s contributions on behalf of the employee were often in lieu of additional wages or other benefits, the Congressional committee observed that complete forfeiture of pension rights was often inequitable, particularly after a substantial period of service. 3 U.S.Cong. & Adm.News 74-41, p. 4719. Congress eventually adopted Pub.L. 93-406 (29 U.S.C. § 1053).
Although plaintiff’s termination occurred prior to adoption of this law, the fact remains in this case that this employer as part of the employment relationship made significant contributions to a retirement plan on behalf of this employee, contributions that the employee presumably would otherwise have received in wages or other benefits. Retirement benefits are essentially deferred compensation which is earned in increments during the course of employment. The employer’s contributions (minus portions attributable to administrative and other expenses) form part of the compensation for the employee’s labor.[4]
This particular employee worked for a substantial period of time for this employer, induced at least to some extent by the promise of retirement benefits if he performed satisfactorily and refrained from *416 leaving the company. He was then prevented from realizing this compensation for past performance by the unilateral action of the employer.
Admittedly, McDermott owned no obligation to plaintiff to continue his employment. Furthermore, the terms of the retirement plan clearly provided that plaintiff had no vested right to retirement benefits until he completed 15 years of service. Nevertheless, plaintiff, having worked satisfactorily for this substantial period of time in partial reliance on this promise and desiring to remain in the company’s employ, is entitled in my opinion to some portion of the benefits for which his employer made particular contributions in consideration for fully performed services.
Complete forfeiture of plaintiff’s pension rights because of involuntary termination without cause is contrary to contract law and to notions of basic fairness and justice. A retirement plan is a continuing offer by the employer to induce employees to remain in service, and the offer may be accepted by the employee’s continuing in service. 1A Corbin, Contracts § 153 (1963); Delaware Trust Co. v. Delaware Trust Co., 222 A.2d 320 (Del.Ch.) (1966). From the point of view of the employee, the forfeiture of his rights by early termination without fault on his part is the equivalent of loss of compensation for services already performed. On the other hand, when a longtime employee’s rights are forfeited, the employer (who has already received these services as partial consideration for retirement plan contributions) also receives (and is unjustly enriched to that extent) a reduction in future premium liability for the remaining covered employees. See Lucas v. Seagrave Corp., 277 F.Supp. 338 (D.Minn.1967); see also 15 Vill.L.Rev. 527, 556 (1970). Thus, the employer receives employee services, but in fact gets back the retirement contributions made as consideration for those services already performed.[5]
I agree with the majority that the contractual language is clear and unambiguous. I simply disagree that courts should always and under all circumstances enforce contractual provisions, no matter how plain, without regard to the circumstances of the particular case. When courts begin to merely call balls and strikes, the age of computer justice has arrived.

. Unpaid portions of awards forfeited under the plan were required to be credited to the reserve fund.

. The committee had the right to waive the requirement of continued service.

. I distinguish on the facts the questionable decision of this court in Alco-Columbia Paper Service, Inc. v. Nash, 273 So.2d 630 (La.App. 4th Cir. 1973), which involved a profit sharing plan with a forefeiture provision based on a condition of non-competition. In that case the application for certiorari was dismissed on joint motion.

. See Inland Steel Co. v. NLRB, 170 F.2d 247 (7th Cir. 1948), cert. den. 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112, in which the court concluded that pension costs are part of employment costs which are frequently substituted for direct cash.

. Internal Revenue regulations governing qualified plans prohibit the employer from receiving a return of forfeited contributions in cash. However, since money is a fungible item, the employer who receives credit against future premium liability enjoys the equivalent benefit of a cash refund.